Kim D. Stephens (*pro hac vice*)
Jason T. Dennett (*pro hac vice*)
Kaleigh N. Powell (*pro hac vice*)
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
Telephone: 206.682.5600
Fax: 206.682.2992
kstephens@tousley.com
jdennett@tousley.com
kpowell@tousley.com

Eric H. Gibbs (SBN 178658)
David Berger (SBN 277526)
Alexander Bukac (SBN 305491)
GIBBS LAW GROUP LLP
505 14th Street, Suite 1110
Oakland, California 94612
Telephone: (510) 350-9700
Fax: (510) 350-9701
ehg@classlawgroup.com
dmb@classlawgroup.com
ajb@classlawgroup.com

*Counsel for Plaintiff and the Proposed Class*

# UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| ALASDAIR TURNER, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>APPLE, INC., a California corporation,<br><br>Defendant. | Case No. 5:20-cv-07495-EJD<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT APPLE INC.'S MOTION TO DISMISS THE FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>Date: July 15, 2021<br>Time: 9:00 a.m.<br>Dept.: Courtroom 4 – 5th Floor<br>Judge: Honorable Edward J. Davila<br><br>FAC Filed: January 28, 2021 |

1

## TABLE OF CONTENTS

2  **MEMORANDUM OF POINTS AND AUTHORITIES**.............................................................. 1

3  **BACKGROUND** ..................................................................................................................... 1

4    A.    Apple intentionally designed the iPhone and iOS 13 to take consumers' valuable cellular
     data without their knowledge or consent. .................................................................. 1
5
     B.    Apple failed to disclose the iPhone allows Apple to use consumers' cellular data without
6          the consumers' knowledge and consent. .................................................................... 2

7    C.    Turner seeks restitution of the value of his cellular data that Apple wrongfully consumed,
          not restitution of the money that he paid to his carrier. ............................................. 3
8
     D.    Apple can resume covert consumption of consumers' cellular data at any time because
9          Apple designed the iPhone to permit such conduct. .................................................. 3

10 **ARGUMENT** .......................................................................................................................... 4

11     I.    Turner is entitled to injunctive relief and restitution for Apple's appropriation of—and
          continuing ability to appropriate—his cellular data for its own use. ........................ 4

12   A.    Turner lacks an adequate remedy at law for the continued harm he suffers because of
          Apple's configuration of his iPhone. ........................................................................ 4
13
     B.    Turner seeks restitutionary disgorgement of the value of his cellular data from Apple, the
14         party that appropriated it. ........................................................................................... 7
       II.   Turner has standing despite Apple's temporary cessation of exploiting his iPhone....... 8
15     III.   Turner adequately alleges each of his omissions claims............................................. 9

16   A.    Turner has standing to pursue his omissions claims because he reasonably relied on
          Apple's omission as to the way it configured his iPhone. ........................................ 11
17
     B.    Turner has pled his CLRA and UCL claims with requisite particularity under Federal
18         Rule of Civil Procedure 9(b). ................................................................................... 12

19      1.    Turner does not need to plead exposure to or reliance on any pre-purchase statement
           by Apple because this is a pure omissions case. ..................................................... 12
20      2.    Turner has adequately pled omissions. ................................................................... 13
         a.    Insufficiency of Apple's disclosures.................................................................. 14
21       b.    Apple's duty to disclose ................................................................................... 15
         c.    Materiality of omission ..................................................................................... 17
22       d.    Other factors establishing duty to disclose ........................................................ 17
           (i)   Exclusive knowledge ............................................................................. 18
23         (ii)   Active concealment................................................................................. 19

24   C.    Because Turner complains of Apple's omissions at the time he bought his iPhone,
          Turner's CLRA claim defeats dismissal. ................................................................. 19
25
     D.    Turner has pled sufficient actual damage under his trespass to chattels claim................ 21
26
   **CONCLUSION**..................................................................................................................... 23

27

28

i

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ahern v. Apple Inc.*,
    411 F. Supp. 3d 541 (N.D. Calif. 2019) ................................................................ 17

*Anderson v. Apple Inc.*,
    No. 3:20-cv-02328-WHO, 2020 WL 6710101 (N.D. Cal. Nov. 16, 2020) ...................... passim

*Asghari v. Volkswagen Gro. of Am., Inc.*,
    42 F. Supp. 3d 1306 (C.D. Cal. 2013) ................................................................ 22

*Baggett v. Hewlett-Packard Co.*,
    582 F. Supp. 2d 1261 (C.D. Cal. 2007) ............................................................ 11, 12

*Beyer v. Symantec Corp.*,
    333 F. Supp. 3d 966 (N.D. Cal. 2018) ................................................................ 21

*Colgan v. Leatherman Tool Grp., Inc.*,
    135 Cal. App. 4th 663 (2006) ...................................................................... 7, 22

*Collins v. eMachines, Inc.*,
    202 Cal. App. 4th 249, 134 Cal. Rptr. 3d 588 (2011) .............................................. 18, 19

*Cover v. Winsor Surry Co.*,
    No. 14-cv-05262-WHO, 2015 WL 4396215 (N.D. Cal. July 17, 2015) ............................... 14

*Daniel v. Ford Motor Co.*,
    806 F.3d 1217 (9th Cir. 2015) ...................................................................... 13

*Daugherty v. Am. Honda Motor Co., Inc.*,
    144 Cal. App. 4th 824 (2006) ...................................................................... 10

*Davidson v. Kimberly-Clark Corp.*,
    889 F.3d 956 (9th Cir. 2018) ...................................................................... 8, 9

*Day v. AT&T Corp.*,
    63 Cal. App. 4th 325 (1998) ........................................................................ 7

*Elias v. Hewlett-Packard Co.*,
    No. 12-CV-00421-LHK, 2014 WL 493034 (N.D. Cal. Feb. 5, 2014) ................................ 19

*Frenzel v. AliphCom*,
    76 F. Supp. 3d 999 (N.D. Cal. 2014) ................................................................ 14

*Grace v. Apple*,
    No. 17-CV-0551, 2017 WL 3232464 (N.D. Cal. July 28, 2017) ..................................... 23

*Herron v. Best Buy Co. Inc.*,
    924 F. Supp. 2d 1161 (E.D.Cal.2013) ............................................................... 19

*Hodsdon v. Mars, Inc.*,
    891 F.3d 857 (9th Cir. 2018) ................................................................ 10, 16, 18

*In re Apple Inc. Device Performance Litig.*,
    347 F. Supp. 3d 434 (N.D. Cal. 2018) ........................................................... passim

*In re iPhone 4S Consumer Litigation*,
    No. C 12-1127 CW, 2013 WL 3829653 (N.D. Cal. July 23, 2013) ................................. 20, 21

ii

*In re iPhone Application Litigation,*
  844 F. Supp. 2d 1040, 1069 (N.D. Cal. 2012). ........................................................ 23
*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices & Products Liab.*
  *Litig.,*
  754 F. Supp. 2d 1208 (C.D.Cal.2010)..................................................................... 19
*Inline, Inc. v. Apace Moving Sys., Inc.,*
  125 Cal. App. 4th 895 (2005)................................................................................... 6
*IntegrityMessageBoards.com v. Facebook, Inc.,*
  No. 18-cv-05286-PJH, 2020 WL 6544411 (N.D. Cal. Nov. 6, 2020) ....................... 5
*Intel Corp. v. Hamidi,*
  30 Cal. 4th 1342 (2003) ......................................................................................... 22
*Johnson v. Harley–Davidson Motor Co. Grp., LLC,*
  285 F.R.D. 573 (E.D.Cal.2012) .............................................................................. 19
*Kearns v. Ford Motor Co.,*
  567 F.3d 1120 (9th Cir. 2009)................................................................................. 11
*Knowles v. Arris International PLC,*
  No. 17-CV-01834-LHK, 2019 WL 3934781 (N.D. Calif. Aug. 20, 2019) .............. 17
*LiMandri v. Judkins,*
  52 Cal. App. 4th 326, 60 Cal.Rptr.2d 539 (1997).................................................... 11
*MacDonald v. Ford Motor Co.,*
  37 F. Supp. 3d 1087 (N.D. Cal. 2014) .................................................................... 11
*Marsikian v. Mercedes Benz USA, LLC,*
  No. 08–04876, 2009 WL 8379784 (C.D.Cal. May 4, 2009)..................................... 19
*Moore v. Apple Inc.,*
  73 F. Supp. 3d 1191 (N.D. Cal. 2014) .................................................................... 21
*Phillips v. Apple Inc.,*
  725 F. App'x 496 (9th Cir. 2018) .................................................................. 8, 9, 10
*Pulaski & Middleman, LLC v. Google, Inc.,*
  802 F.3d 979 (9th Cir. 2015).................................................................................... 7
*Sonner v. Premier Nutrition Corp.,*
  971 F.3d 834 (9th Cir. 2020)........................................................................... 4, 5, 6
*Summers v. Earth Island Inst.,*
  555 U.S. 488 (2009) ................................................................................................ 9
*Thrifty-Tel, Inc. v. Bezenek,*
  46 Cal. App. 4th 1559 (1996)................................................................................. 23
*U.S. ex rel. Lee v. Corinthian Colls.,*
  655 F.3d 984 (9th Cir. 2011)................................................................................... 11
*WhatsApp Inc. v. NSO Group Techs. Ltd.,*
  472 F. Supp. 3d 649 (N.D. Cal. 2020) .................................................................... 22
*Yastrab v. Apple, Inc.,*
  No. 5:14-cv-01974-EJD, 2015 WL 1307163 (N.D. Cal. Mar. 23, 2015) ................ 21

iii

*Zeiger v. WellPet LLC*,
No. 3:17-cv-04056-WHO, 2021 WL 756109 (N.D. Cal. Feb. 26, 2021) ................................... 5

**Statutes**

Cal. Bus. & Prof. Code § 17203 ..................................................................................... 7

1

## STATEMENT OF THE ISSUES TO BE DECIDED

2      Defendant Apple Inc.'s Motion to Dismiss raises the following issues:

3  1.  Has Plaintiff Alasdair Turner adequately pleaded that he lacks an adequate

4      remedy at law because an injunction and equitable restitution are necessary to

5      redress his alleged harm?

6

7  2.  Does Turner have standing to pursue claims sounding in fraud, as well as his

8      claims for injunctive relief, where he reasonably relied on Apple's omissions and

9      Apple has provided only an incomplete remedy for its conduct?

10

11  3.  Has Turner adequately pleaded his omissions claims with particularity?

12

13  4.  Has Turner adequately pleaded his CLRA claim?

14

15  5.  Has Turner adequately pleaded his trespass to chattels claims?

16

17

18

19

20

21

22

23

24

25

26

27

28

OPPOSITION TO MOTION TO DISMISS
Case No. 5:20-cv-07495-EJD

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

3

4

5

6

7

8

9

10

The core allegation in this action is a simple one: Apple secretly designed and built a Trojan horse capability in iPhones that became active when Apple distributed iOS 13 and surreptitiously consumed users' cellular data for Apple's own benefit and without the users' knowledge or consent. Rather than engage with those allegations, Apple mischaracterizes or ignores the facts and claims pled in the First Amended Complaint ("FAC"). Instead of meeting its burden on a motion to dismiss, Apple presents its own, alternate version of the FAC and asks this Court to dismiss three out of four claims (and any claims for equitable relief) from a case that is not the one Turner filed. Turner's actual claims, however, meet applicable pleading requirements. The Court should deny Apple's motion.

11

## BACKGROUND

12

13

**A. Apple intentionally designed the iPhone and iOS 13 to take consumers' valuable cellular data without their knowledge or consent.**

14

15

16

17

18

19

20

21

22

23

Turner and the Class bought their iPhones with the expectation that their iPhone's cellular data consumption would be commensurate with the cellular data that they—as users—actually consumed. Unsurprisingly, being able to predict and control cellular data usage is central to the meaningful function of an iPhone. *See id.* ¶ 38. Because they, like many individuals, pay for cellular data plans with a limited amount of data (*e.g.*, 5 GB per month), being able to predict and control their cellular data usage informs their decision about what type of cellular phone and data plan to purchase—otherwise, if they use more cellular data than their plan allows, they are charged (often exorbitant) overage fees by their carrier. FAC ¶ 21–22. For that reason, consumers expect that the cellular data their iPhones consume will be commensurate with the cellular data that they actually use. *See id.* ¶ 38.

24

25

26

27

28

In reality, Apple designed its iPhones with the undisclosed capability to appropriate and consume users' cellular data for Apple's own benefit. *Id.* ¶¶ 39, 42. Apple activated this capability in 2019 by rolling out iOS 13, which caused iPhones to send significant amounts of data to Apple, routed Apple's data transfers exclusively over cellular networks, and exempted Apple's data transfers from normal settings favoring Wi-Fi connections. To prevent users from

1

noticing this traffic, Apple miscategorized the data as coming from "Uninstalled Apps" on the iPhones' internal cellular data meter. *Id.* ¶¶ 42, 47.

Instead of squarely addressing Turner's allegations, Apple's Motion to Dismiss largely attacks a fictitious strawman complaint. Apple acknowledges Turner's central allegation—that Apple designed the iPhone and iOS 13 to appropriate consumer's cellular data for Apple's own benefit. Mot. to Dismiss at 1. While Apple denies Turner's factual allegations (Mot. to Dismiss at 1, 13), it never explains why, taking this central allegation as true, the FAC should be dismissed. Instead, Apple attempts to obtain dismissal only by re-casting Turner's core allegation into something it is not: "Plaintiff solely alleges that consumed cellular data was miscategorized, and that he paid an additional $15 to Verizon as a result." Mot. to Dismiss at 14.

But that is not Turner's sole allegation, nor even an accurate characterization of his primary allegation. Although Apple characterizes Turner's allegation as mere "misattribution of data usage to Uninstalled Apps," that misattribution was *not* the core problem—it was just Apple's way of covering its tracks. FAC ¶¶ 26–27. Apple could have, but did not, account for its use of iPhone owners' cellular data in a category easily attributable to Apple itself. Instead, Apple attempted to hide its actions by categorizing the consumption as coming from "Uninstalled Apps," falsely suggesting that the *user* caused the data consumption, either directly or by uninstalling an application. *Id.* Turner seeks relief not for the misattribution, but for Apple's underlying actions that it sought to cover up with that misattribution.

**B. Apple failed to disclose the iPhone allows Apple to use consumers' cellular data without the consumers' knowledge and consent.**

Turner's allegations do not start with Apple's introduction of iOS 13, which contained the Consuming Code. Rather, they start with Apple designing the iPhone with the capacity, or capability, to enable Apple to secretly appropriate users' cellular data for Apple's benefit should Apple choose to do so. *See id.* ¶ 4. Had Apple disclosed this fact prior to his purchase, Turner would have purchased a different device, paid less for his iPhone, or selected a different cellular data plan to account for Apple's use of his data. *See id*. ¶ 40.

Nowhere did Apple make that disclosure to consumers such as Turner at the time of

sale—not in its marketing materials and not in the materials it provided Turner and the Class when they purchased their iPhones. Nor did Apple make such a subsequent disclosure in the summary of the iOS 13 update itself, or the Software Licensing Agreement to which Apple required users who downloaded the update to agree. That agreement incorrectly represents that users have the ability to "view and control" the applications permitted to use cellular data and how much data those applications consume. *See id.* ¶ 18.

Turner is not alleging that the features, apps, and Services of the Apple Software disclosed in Apple's Software Licensing Agreement, all of which benefit the iPhone owner, caused him harm. Rather, Turner seeks relief because Apple never told him that it designed the iPhone in a way that permitted it to surreptitiously consume iPhone users' valuable cellular data exclusively for its own purpose, which benefitted only Apple. *See id.* ¶ 19. Apple never disclosed that it could, would, or did use Turner's iPhone to take his cellular data without his input. *Id.* ¶ 3.

**C.  Turner seeks restitution of the value of his cellular data that Apple wrongfully consumed, not restitution of the money that he paid to his carrier.**

Apple's rewriting of Turner's theory of the case also extends to its characterization of the he seeks. Apple incorrectly claims that Turner is seeking restitution of the $15 he paid to Verizon. *See* Mot. to Dismiss at 6. But Apple appropriated Turner's cellular data for its own use, and Turner (and the Class) are entitled to restitution for the *value of the data Apple consumed*. *See* FAC ¶ 83. Turner paid for the cellular data that Apple used, and that data had value to him. *See id.* ¶¶ 35–36. Every time Apple appropriated one megabyte of his cellular data, the amount available for his use was reduced by one megabyte. *Id.*

**D.  Apple can resume covert consumption of consumers' cellular data at any time because Apple designed the iPhone to permit such conduct.**

In accordance with Apple's advice, Turner will continue to update his iPhone with iOS updates. *Id.* ¶ 41. This places him at risk of ongoing harm because Apple designed the iPhone to allow Apple at any time to secretly reintroduce the Consuming Code unless enjoined from doing so. Indeed, Apple was informed by multiple users in beta testing for iOS 13 that users' iPhones were consuming cellular data and attributing it to Uninstalled Apps. Apple nevertheless decided

to release iOS 13 to the unsuspecting public, covered up the Consuming Code by attributing its data transfers to Uninstalled Apps, maintained the Consuming Code through multiple iterations of iOS 13 (even after dozens of consumer complaints), and then stonewalled the press when discovered. *Id.* ¶ 46. Although Apple finally removed the Consuming Code in July 2020, its actions are not consistent with an entity that has forever ceased appropriation of cellular data.

## ARGUMENT

## I.   Turner is entitled to injunctive relief and restitution for Apple's appropriation of— and continuing ability to appropriate—his cellular data for its own use.

Among other remedies, Turner seeks restitution and an injunction for Apple's unlawful conduct under California's Unfair Competition Law ("UCL") and Consumers Legal Remedies Act ("CLRA").[1] Apple argues that Turner has not established that he lacks "an adequate remedy at law," and therefore cannot pursue either remedy *See* Mot. at 5–6 (discussing *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020)). Apple misconstrues the relief Turner seeks and is entitled to. *Sonner* in no way bars Turner's UCL or CLRA claims because Turner has sufficiently pleaded that he lacks an adequate remedy at law. First, only an injunction can address Apple's continued failure to disclose its iPhone defects, which it can exploit for its own benefit at any time. Second, Turner's restitution claims are not commensurate with his claims for damages as Apple characterizes them, leaving Turner with inadequate legal remedies.

### A.   Turner lacks an adequate remedy at law for the continued harm he suffers because of Apple's configuration of his iPhone.

Turner agrees with Apple that in *Sonner*, the Ninth Circuit held that a plaintiff "must establish that she lacks an adequate remedy at law before securing equitable restitution for past harm under the UCL and CLRA." 971 F.3d at 844. Notably, *Sonner* did not limit the *remedies*

---

[1] Apple notes that "Plaintiff seeks only injunctive relief under [his CLRA] claim and has not pled compliance with the requirements for bringing a claim for damages thereunder." Mot. to Dismiss at 6. Apple omits that Turner has satisfied the CLRA notice requirements and the FAC explains he intends to file an amended complaint, adding a CLRA damages claim. FAC ¶ 73.

4

available to a UCL or CLRA plaintiff. Instead, *Sonner* addressed whether a federal court could exercise its equitable powers to order the relief available under those laws when state law provided the law of decision. *Id.* at 841.

Turner has established that legal remedies alone are inadequate. Turner and the Class continue to own iPhones that Apple has configured to allow it to consume their cellular data for its own benefit (an ability Apple has never disclosed and refuses to comment on, *see* FAC ¶ 46), and Apple could reintroduce the Consuming Code to those iPhones. As a matter of law, Apple's voluntarily stopping its Consuming Code data transfers does not equate to an adequate remedy at law. *See IntegrityMessageBoards.com v. Facebook, Inc.*, No. 18-cv-05286-PJH, 2020 WL 6544411, at *6, *8 (N.D. Cal. Nov. 6, 2020) (finding that "plaintiff lacks an adequate legal remedy for future harms" because plaintiff had "no factual basis to quantify its actual damages for future harm," and thus there was no adequate legal remedy for plaintiff's requested injunctive relief); *Zeiger v. WellPet LLC*, No. 3:17-cv-04056-WHO, 2021 WL 756109, at *21 (N.D. Cal. Feb. 26, 2021) ("[Plaintiff's] remedy at law, damages, is retrospective. An injunction is prospective. Damages would compensate [Plaintiff] for his past purchases. An injunction would ensure that he (and other consumers) can rely on [Defendant's] representations in the future."). Turner has pleaded Apple's willingness to exploit its configuration of Turner's iPhone for its own benefit even in the face of consumer complaints, and thus Turner has adequately pleaded that this same harm is likely to recur.[2] FAC ¶¶ 44–45. Not only did Apple introduce the Consuming Code to the broader public after beta-testers complained that early versions of iOS 13 were consuming their data, but Apple also maintained the Consuming Code through *more than a dozen* iterations of iOS 13 after its initial launch. *Id.* ¶¶ 44–45.

Further, unlike the plaintiff in *Sonner*, Turner's claim for restitution under the UCL is

---

[2] In addition, Turner has identified evidence that this kind of exploitation by Apple was not new to iOS 13, but has happened before. *See, e.g.*, https://discussions.apple.com/thread/7361783. If the Court finds that Turner has not sufficiently pleaded that he lacks an adequate remedy at law, he requests leave to replead to include these additional allegations.

5

different from—and more certain and efficient than—damages that he and the Class might seek from Apple for their lost data. The restitution claim encompasses the full value of the misappropriated data, not just the overage charges users paid to their carrier. *See Sonner*, 971 F.3d at 844 ("Sonner fails to explain how the same amount of money for the exact same harm is inadequate or incomplete . . . ."); *Anderson v. Apple Inc.*, No. 3:20-cv-02328-WHO, 2020 WL 6710101, at *7 (N.D. Cal. Nov. 16, 2020) (dismissing UCL and CLRA claims without prejudice in part because plaintiffs did not argue "that restitution under the CLRA or UCL would be more certain, prompt, or efficient than the legal remedies they request."). Apple has already construed Turner's damages request as one for "overage charges paid by Plaintiff to his carrier, Verizon." Mot. to Dismiss at 6. But those "damages" would not fully compensate or make whole those individuals, including Turner, whose cellular data Apple consumed, but who did not go over their data limit in a particular month and did not receive an overage charge. *See* FAC ¶¶ 31–34. Turner and the Class had a right to use (or not use) the data they paid for, as that data had value to them. *Id.* ¶¶ 35–36. Every time Apple appropriated even a megabyte of that cellular data, that data was then unavailable to Turner and the Class, *id.* ¶ 35, irrespective of whether they then went over their cellular data limits and paid overages. Thus, only restitutionary damages (the full value of the cellular data that Apple took) can make Turner and the Class whole. *See, e.g.*, *Inline, Inc. v. Apace Moving Sys., Inc.*, 125 Cal. App. 4th 895, 903 (2005) ("On the one hand, 'damages' describes a payment made to compensate a party for injuries suffered. In contrast, a monetary payment is more properly characterized as restitutionary than compensatory in nature when the defendant is asked to return something he wrongly received . . . ." (internal quotation and brackets omitted)).

The restitution that Turner seeks is meant to put him back in the position he was in before Apple appropriated his data. *See* Cal. Bus. & Prof. Code § 17203; *Day v. AT&T Corp.*, 63 Cal. App. 4th 325, 338–39 (1998) ("Taken in the context of the statutory scheme, the definition suggests that section 17203 operates only to return to a person those *measurable amounts* which are wrongfully taken by means of an unfair business practice.") (emphasis in original). In short, the restitution Turner seeks—the *entire* value of the cellular data that Apple took from him and

6

the Class—is more certain and efficient than compensatory damages (his remedy at law).

### B. Turner seeks restitutionary disgorgement of the value of his cellular data from Apple, the party that appropriated it.

In measuring restitution under the UCL "[w]here a defendant has wrongfully obtained a plaintiff's property, 'the measure of recovery for the benefit received . . . is the value of the property at the time of its improper acquisition . . . or a higher value if this is required to avoid injustice'. . . ." *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 988–89 (9th Cir. 2015) (quoting *Colgan v. Leatherman Tool Grp., Inc.*, 135 Cal. App. 4th 663, 698 (2006)). Consistent with that guidance, Turner seeks restitution from Apple for the value of Turner's cellular data that Apple appropriated. FAC ¶¶ 40, 70, 72, 82.

Apple argues that Turner cannot seek restitution under the UCL for funds paid to a third party. Mot. to Dismiss at 6. But in moving to dismiss on this basis, Apple again makes the FAC into something it is not. According to Apple, "In the FAC, Plaintiff seeks restitution for overage charges paid by Plaintiff to his carrier, Verizon." *Id.* at 6. Notably absent from Apple's assertion here is *any* citation to the FAC—because the FAC says (and seeks) no such thing as a measure of restitution. Turner seeks restitution for the *value* of his cellular data from *Apple*, the party that benefited from that data, not from his wireless carrier.[3] For that reason, Apple's citation to *Phillips v. Apple Inc.*, 725 F. App'x 496, 499 (9th Cir. 2018) is inapposite. In *Phillips*, the plaintiffs alleged that they paid additional amounts to their carriers because Apple's "Wi-Fi Assist"—which caused an iPhone to use cellular data if Wi-Fi was slow—caused their phones to use additional data without their knowledge. *See id.* at 498. Dismissal was appropriate in that case because the plaintiffs failed to allege "that Apple received money or property, indirectly or otherwise, from their overage payments." *Id.* at 499. Turner makes just that allegation here: Apple appropriated his property—his cellular data—*for its own benefit.*

---

[3] Turner reserves the right to seek from Apple damages in the form of overage charges paid to his carrier under his claims, including the CLRA, but that is not the restitution in the FAC.

**II.    Turner has standing despite Apple's temporary cessation of exploiting his iPhone.**

Again re-writing the FAC in an effort to obtain dismissal, Apple argues that Turner lacks standing to pursue his claims for injunctive relief because, according to Apple, he has not shown that Apple is likely to reintroduce the Consuming Code. Turner's well-pleaded allegations demonstrate or raise the reasonable inferences that (1) the capacity of the iPhone to permit covert consumption of consumers' cellular data is a continuing risk that Apple can exploit to consume iPhone users' cellular data for Apple's own benefit, and (2) Apple is likely to exploit that capacity in the future, whether by re-introducing the Consumer Code or by employing a similar mechanism to exploit consumers.

"Past wrongs, though insufficient by themselves to grant standing, are 'evidence bearing on whether there is a real and immediate threat of repeated injury.'" *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018). In the false advertising context, a plaintiff "may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase, because the consumer may suffer an 'actual and imminent, not conjectural or hypothetical' threat of future harm." *Id.* at 969 (citing *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)). The Ninth Circuit has identified two general categories of allegations sufficient to confer standing for injunctive relief in this context: First, where a plaintiff alleges that "she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to," and second, where a consumer plausibly alleges that "she might purchase the product in the future, despite the fact it was once marred by false advertising or labeling, as she may reasonably, but incorrectly, assume the product was improved." *Id.* at 969–70, 971 (finding plaintiff had standing to bring a claim for injunctive relief under the UCL and CLRA).

Turner has alleged that the harm about which he complains—that Apple will take advantage of the way it configured his iPhone without disclosing that fact to him—is sufficiently likely to recur. As explained above, Turner asserts that Apple activated the Consuming Code in iOS 13 even after complaints in beta testing and through over a dozen iterations of iOS 13,

raising the inference that Apple is unconcerned with consumer dissatisfaction of its data consumption, and suggesting that Apple would be willing to resume its covert actions for its own benefit. *See* FAC ¶¶ 44–45. Turner has further alleged that he and other members of the Class would continue to use their iPhones and download future versions of iOS released by Apple, but that they were unable to tell whether Apple will continue to conceal information about its ability to consume their cellular data for its own benefit. *Id.* ¶¶ 41, 62.

Apple nevertheless argues that Turner lacks standing to pursue injunctive relief because Apple ceased its use of the Consuming Code in June 2020. Apple's argument again reads the FAC too narrowly and fails to take into account Turner's expressed intent to continue downloading iOS updates in the future. *See* FAC ¶¶ 41, 62.[4] Apple again puts misplaced reliance on *Phillips*, which dealt with its Wi-Fi Assist feature. Mot. to Dismiss at 7. But in *Phillips*, the plaintiffs admitted to switching off the offending feature and failed to allege that Apple could reintroduce the feature without giving them the ability to turn it off. 725 F. App'x at 498. In this case, Turner not only alleges that he has not (and cannot) turn off the offending feature—Apple's ability to consume his cellular data for his own use—but also that he is unable to prevent Apple's data consumption without severely limiting the functioning capacity of his phone. FAC ¶ 33. Here, unlike *Phillips*, the harm about which Turner complains cannot be abated by Turner alone.

### III.   Turner adequately alleges each of his omissions claims.

Turner's consumer protection claims under the CLRA and UCL target Apple's deceptive omissions about its intent and capability to covertly consume consumers' data. Instead of squarely addressing those claims, Apple engages in sleight of hand, attacking a strawman complaint that bears little resemblance to Turner's actual allegations and asking the Court to apply inapplicable legal tests to Turner's pure omissions theories.

Each of Turner's misrepresentation claims are based on "pure omissions." Turner's CLRA claim alleges that when he purchased his iPhone, Apple failed to disclose: (1) "its

---

[4] Turner also intends to buy iPhones in the future and has already done so. To the extent the Court finds it necessary, he requests leave to amend his Complaint to include that allegation.

OPPOSITION TO MOTION TO DISMISS
Case No. 5:20-cv-07495-EJD

capability and intention to surreptitiously consume users' cellular data exclusive for its own purposes," (2) "the manner in which iPhones consumed data," and (3) "the effects of the Consuming Code." FAC ¶ 68 (CLRA claim). Turner's fraudulent-prong UCL claim is based on the same omissions at the time of sale *and* omissions at the time Apple issued the iOS 13 update. *Id.* ¶ 80 (omissions rendered Turner and class members unable to "make informed choices about whether to purchase an iPhone, install the iOS on their iPhones, or alter their cellular data plans to account for the increased cellular data usage caused by the Consuming Code").

"[T]o be actionable, the omission must be contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obliged to disclose." *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 863 (9th Cir. 2018). In a "pure omissions" case, the complaint must plausibly allege either a safety hazard or a duty to disclose. *Id.*; *Daugherty v. Am. Honda Motor Co., Inc.*, 144 Cal. App. 4th 824 (2006). A duty to disclose exists when:

> [1] the plaintiff alleges that the omission was material; [2] the plaintiff ... plead[s] that the defect was central to the product's function; and [3] the plaintiff ... allege[s] one of the four *LiMandri* factors." *Hodsdon*, 891 F.3d at 863. Those "*LiMandri* factors" are "(1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material facts." *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336, 60 Cal. Rptr. 2d 539 (1997).

*Anderson*, 2020 WL 6710101, at *11. The plaintiff also must plausibly allege actual reliance, a standard that differs in pure omissions claims from affirmative misrepresentation and even partial misrepresentation claims. *Id.* at *15.

Finally, Turner's omissions claims must comport with Rule 9(b), which requires that "a party must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). "The circumstances constituting the fraud must be 'specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong.'" *In re Apple Inc. Device Performance Litig.*, 347 F. Supp. 3d 434, 444 (N.D. Cal. 2018) (quoting *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir.

10

2009)) (alteration in original). Except for "the circumstances of fraud . . . other facts may be

pleaded generally, or in accordance with Rule 8." *U.S. ex rel. Lee v. Corinthian Colls.*, 655 F.3d

984, 992 (9th Cir. 2011).

**A.  Turner has standing to pursue his omissions claims because he reasonably relied on Apple's omission as to the way it configured his iPhone.**

In an omission-based case such as this one, "a plaintiff 'will not be able to specify the

time, place, and specific content of an omission as would a plaintiff in a false representation

claim.'" *Anderson*, 2020 WL 6710101, at *5 (quoting *MacDonald v. Ford Motor Co.*, 37 F.

Supp. 3d 1087, 1096 (N.D. Cal. 2014)). Thus, "[b]ecause such a plaintiff is alleging a failure to

act instead of an affirmative act, the plaintiff [sometimes] cannot point out the specific moment

when the defendant failed to act." *Id.* (quoting *Baggett v. Hewlett-Packard Co.*, 582 F. Supp. 2d

1261, 1267 (C.D. Cal. 2007)).

Therefore, when evaluating standing in an omissions case, courts will look to whether a

plaintiff has sufficiently alleged that she would have been exposed to a disclosure had it been

made. *Id.* In *Anderson*, for example, the plaintiffs alleged that Apple failed to disclose a

difference in the antennas types it used in two of its iPhones. *Id.* at *1. Apple moved to dismiss

in part—as it does here—on the basis that the plaintiffs lacked standing because "the FAC

lack[ed] allegations that the plaintiffs 'actually relied' on the statements that were misleading."

*Id.* at *4. The court disagreed. It determined that the plaintiffs had standing because they alleged

(1) that Apple failed to adequately disclose the information at issue, (2) the plaintiffs reviewed

marketing materials prior to purchasing their iPhones, and (3) that had the plaintiffs known of the

differences in antennas between their phones and others, they would not have purchased their

iPhones at the price they did. *Id.* at *5.

The same is true here. Turner alleges that Apple failed to adequately disclose that it had

designed his iPhone so that Apple could co-opt his cellular data for its own use. FAC ¶ 47. He

alleges that he reviewed the materials accompanying his iPhone purchase and that were

necessary to set it up (in addition to the information accompanying iOS 13), FAC ¶ 39, thus

raising a "reasonable inference that [he] would have encountered the disclosure had it been

made." *See Anderson*, 2020 WL 6710101, at *5. And he alleges that had he known Apple had designed his iPhone in that way, he would have either purchased a different phone or paid less for the one he bought. FAC ¶ 40.

In trying to avoid this conclusion, Apple misconstrues Turner's pleading. Turner does not, as Apple suggests, allege that he paid more for his iPhone in 2018 "than he otherwise would have as a result of Apple's alleged misrepresentations and omissions regarding iOS 13, released in September 2019, and its alleged consumption of cellular data." Mot. to Dismiss at 9. Turner alleges that he paid more for his iPhone in 2018 than he otherwise would have had Apple adequately disclosed that it had configured his iPhone in a way that allowed it to activate the Consuming Code and appropriate his cellular data for its own benefit *at any time it chose to do so*. FAC ¶ 39. Turner has standing to pursue his omissions-based claims.

**B.  Turner has pled his CLRA and UCL claims with requisite particularity under Federal Rule of Civil Procedure 9(b).**

**1.  Turner does not need to plead exposure to or reliance on any pre-purchase statement by Apple because this is a pure omissions case.**

Turner's detailed allegations easily meet the heightened pleading standard of Rule 9(b). The FAC specifically pleads that Apple made material omissions with the iPhone sale upon which Turner relied. When Turner bought his iPhone, Apple did not disclose to him that it has the capability to surreptitiously use his cellular data for Apple's own purposes, that it would in fact consume his cellular data without his input or control, that such consumption would cost him money for data he did not use, and, notably, that the consumption would affect the central functioning of the iPhone. FAC ¶¶ 3–5, 8. These are more than specific enough to allow Apple to "defend against the charge and not just deny that [it has] done anything wrong." *Apple Device Performance*, 347 F. Supp. 3d at 443–44. The allegations certainly clear the bar required for pure omissions claims. *See Anderson*, 2020 WL 6710101, at *5.

Despite Turner's sufficient particularity, Apple argues that he does not identify "any particular statement he saw, read or relied upon in making the decision to purchase his iPhone." Mot. at 18. Apple misstates the applicable standards. In a pure omissions case, "[t]he plaintiffs

OPPOSITION TO MOTION TO DISMISS
Case No. 5:20-cv-07495-EJD

do not have to point to a hypothetical, counterfactual piece of marketing in which the disclosure would have occurred. Instead, to satisfy the pleading rules and *Daniel*, the plaintiffs had to plausibly allege that Apple's pre-purchase disclosures would have altered their purchases." 2020 WL 6710101, at *15 (collecting cases and discussing *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1225 (9th Cir. 2015)).

Turner has met this standard. He has plausibly alleged that, if Apple had made its disclosures as obligated, it would have altered his purchasing decision. *See* FAC ¶ 40. Turner's allegations are even stronger than those in *Anderson* because the FAC identifies several types of documentation Turner reviewed and relied upon in the purchase of his iPhone and installing iOS 13. *See* FAC ¶¶ 18, 39–41. Apple could have—and should have—disclosed its omissions in such materials. In fact, the reasonable inference exists that Apple fully knew that consumers such as Turner care about limiting cellular data usage because Apple built the cellular data meter to satisfy that demand (and then only *secretly* exempted itself from those controls). Accordingly, Turner has pled the content of the omissions, where the omissions could have been made, and that the omissions, if made, would have influenced his buying decision. This satisfies Rule 9(b).

In trying to undermine that conclusion, Apple relies on easily distinguishable cases like *Frenzel* and *Cover*, which addressed *affirmative misrepresentations*, subject to stricter pleading requirements than Turner's pure omissions claims. *See* Mot. to Dismiss at 18 (citing *Frenzel v. AliphCom*, 76 F. Supp. 3d 999, 1014–15 (N.D. Cal. 2014) (dismissing affirmative misrepresentation claims under Rule 9(b)); *Cover v. Winsor Surry Co.*, No. 14-cv-05262-WHO, 2015 WL 4396215, at *7 (N.D. Cal. July 17, 2015) (same)). Those cases are inapposite in a case, like this one, involving pure omissions.

### 2. Turner has adequately pled omissions.

Apple next argues that dismissal is warranted because it actually *did* make sufficient disclosures and because Turner has failed to allege that Apple has a duty to disclose anything beyond what it disclosed. Both contentions are contrary to the law.

a.      **Insufficiency of Apple's disclosures**

Apple points to its Licensing Agreement to the iOS 13 software update as providing sufficient disclosures. This does not make sense *temporally* for the CLRA claim and all but one UCL omissions claim, which are based on omissions surrounding the earlier sale of the iPhone; subsequent written disclosures cannot retroactively supply previously omitted content. Nor does it make sense *substantively* for both the CLRA and the UCL claims. The disclosure reads:

> You agree that many features, built-in apps, and Services of the Apple Software transmit data and could impact charges to your data plan, and that you are responsible for any such charges. *You can view and control which applications are permitted to use cellular data and view an estimate of how much data such applications have consumed under Cellular Data Settings.* In addition, Wi-Fi Assist will automatically switch to cellular when you have a poor Wi-Fi connection, which might result in more cellular data use and impact charges to your data plan. . . . .

FAC ¶ 18 (emphasis added). Notably, this language—including the italicized language, which Apple omits from its briefing—does not disclose the capacity for Apple to use a consumer's data for its own purposes, without their knowledge, and without their control.

Apple is thus attempting an end-run around the FAC's factual allegations. Although it is indeed true that Apple *also* failed to adequately and truthfully inform Turner and the other members of the putative class about iOS 13, Apple's omissions regarding the iPhone at the time of sale alone are enough to safeguard his CLRA all but one of his UCL omissions claims from faulty dismissal. Apple's actions in regard to the software update are evidence of additional concealment that exacerbated the prior omissions. It is material that Apple failed to disclose that "under certain circumstances" can include when Apple secretly operates to obtain users' data and eat through their data plans, and Apple's role in such covert misconduct makes its "the user is solely responsible" suggestion a falsity.

The nature and context of Apple's self-proclaimed salvaging disclosures distinguishes them from the disclosures addressed in the very case upon which Apple relies. In *Tomek v. Apple, Inc.*, another federal district judge concluded that, in light of Apple's express disclosure that "battery life and charge cycles vary by use and settings," the plaintiff failed to allege that he relied on any battery-related misrepresentation or omission. *See* No. 2:11-cv-02700-MCE-DAD,

1    2012 WL 2857035, at *4 (E.D. Cal. July 11, 2012). In that case, Apple was not actively and

2    secretly acting to consume the plaintiff's battery charge.

3            Here, in contrast, Apple knew it could secretly use and consume consumer data,

4    implemented a plan to do so, and executed that plan. Apple's "data usage varies" disclaimer is

5    therefore substantively different from its battery-life disclaimer; there is a difference between

6    "things vary" and "we can and will *make* things vary without telling you." Turner may or may

7    not have accepted the former type of disclaimer, but he has pled that if he had received the latter

8    disclaimer, he "would not have acted the way he did." FAC ¶ 40.

9                        **b.      Apple's duty to disclose**

10           Turner has also pled sufficient facts to establish that Apple had a duty to disclose the

11   omissions about which he complains. The Ninth Circuit has recognized that "manufacturers may

12   'have a duty to disclose a defect when it affects the central functionality of a product.'" *Apple*

13   *Device Performance*, 347 F. Supp. 3d at 459 (quoting *Hodsdon v. Mars, Inc.*, 891 F.3d at 863).

14   Turner expressly pleads sufficient impact on central functionality to create a duty to disclose.

15   FAC ¶ 8 ("[Apple's] use of that capability directly affected the central functioning of Plaintiff

16   and Class members' iPhones.").

17           To present viable fraud claims, Turner need not assert, as Apple contends, that his iPhone

18   ceased to function as a phone or a smartphone. Instead, all that Turner must plead is that Apple

19   violated a duty to disclose an omission that goes to *the central functionality* of the product. *See*

20   *Hodsdon*, 891 F.3d at 863–64. Thus, the FAC pleads that Turner purchased a phone without

21   being told that the phone would uncontrollably consume his cellular data and secretly subvert

22   features designed to let users control cellular data costs, all to facilitate Apple's self-interested

23   data transmissions. FAC ¶¶ 33, 35–36, 38, 48, 70. The fact that Turner had to turn "cellular data

24   off completely" to avoid Apple's data theft goes to the central functionality of his smartphone.

25   *Id.* ¶ 33. A cellular phone needs cellular function to perform; a smartphone without cellular

26   function is no longer a performing smartphone.

27           Precedent supports Turner's central functionality allegations. The Ninth Circuit has

28   recognized that "[a] computer chip that corrupts the hard drive, or a laptop screen that goes dark,

                                                    15

renders those products incapable of use by any consumer." *Hodsdon*, 891 F.3d at 864 (articulating examples of central functions, but not a legal test). A cellular phone whose cellular data function must be turned off to avoid falling outside the data plan purchased, to avoid data consumption that exceeds the consumer's own use, presents a sufficiently analogous loss of function attributable to the manufacturer's omissions. When a company does not tell you that your chip will corrupt your hard drive, that your screen will go dark, or that your cellular phone cannot function as a cellular phone without shutdowns, the company is hiding a loss of full performance. This presents a standard for a claim by "any consumer"—an objective, reasonable person standard—that is met here.

Such fundamental deprivation of performance distinguishes the instant case from those cases upon which Apple mistakenly relies. *Knowles v. Arris International PLC*, No. 17-CV-01834-LHK, 2019 WL 3934781, at *16 (N.D. Calif. Aug. 20, 2019), involved a modem that slowed web browsing and file transfers, in addition to other defects. Apple tells the Court that the *Knowles* court rejected this defect as sufficiently affecting the core functioning of the device because the plaintiffs were still able to use the modem. But the *Knowles* court expressly noted that the plaintiffs did not have to make an additional purchase simply to ensure that the modem still essentially functioned as a modem. *See id.* In contrast, the omission here means that Turner lost functioning, lost data that he purchased, and had to pay for even more data for his iPhone to function as a smartphone. Similarly, in *Ahern v. Apple Inc.*, 411 F. Supp. 3d 541 (N.D. Calif. 2019), the omission—that gray, hazy areas existed around the corners of a computer screen—did not prevent a loss of significant function or necessitate additional expenditures to obtain expected functioning under a reasonable person standard. *See id.* at 568. Again, this is in marked contrast to having to disable a function on the device, which Turner did, losing purchased data, or having to purchase even more data to obtain the purchased functionality and service. While Apple characterizes its consumption of Turner's data as "miscategorized" data that did not render the iPhone incapable of use, Mot. to Dismiss at 21, this is misdirection. Turner cannot use data that was taken from him, should not have to buy additional data because of his defective iPhone, and should not have to choose between those options and having a cellular phone

16

without cellular capability.

### c.      Materiality of omission

Turner also pleads facts sufficient to show that Apple's omissions were material. FAC ¶ 8, 40, 70 ("Apple's omissions were material because they were likely to deceive reasonable consumers into believing that their iPhones' cellular data consumption would be commensurate with their actual use of their iPhones."). Apple implicitly concedes the materiality of preventing improper cellular data costs by offering consumers a cellular data meter and even extolling consumer control of that data. Without question, Apple's omissions regarding lost data, lost functionality, and increased costs were material to a reasonable consumer.

### d.      Other factors establishing duty to disclose

In addition to pleading materiality and central functionality, a plaintiff must also plead at least one of the following conditions:

> "(1) [that] the defendant is the plaintiff's fiduciary; (2) [that] the defendant has exclusive knowledge of material facts not known or reasonably accessible to the plaintiff; (3) [that] the defendant actively conceals a material fact from the plaintiff; [or] (4) [that] the defendant makes partial representations that are misleading because some other material fact has not been disclosed." [*Hodsdon*, 891 F.3d.] at 862 (quoting *Collins v. eMachines, Inc.*, 202 Cal.App.4th 249, 134 Cal.Rptr.3d 588, 593 (2011)).

*Apple Device Performance*, 347 F. Supp. 3d at 459. Turner again meets his pleading burden, averring that Apple possessed exclusive knowledge and intentionally concealed that knowledge from him and the putative class members. FAC ¶ 71 ("Apple owed Plaintiff and putative Class members a duty to disclose the truth about its cellular data use capabilities and the Consuming Code because Apple: (1) possessed exclusive knowledge of those matters and (2) intentionally concealed the foregoing from Plaintiff and putative Class members."). The reference to paragraph 71 of the FAC is especially notable in light of Apple's argument that Turner failed to plead a duty to disclose; the clause "Apple owed Plaintiff . . . a duty to disclose" followed by what this duty encompassed and why it arose cannot be simply ignored.

### (i)   Exclusive knowledge

In arguing that Turner has failed to plead that Apple had exclusive knowledge of the iPhone's capacity to permit covert data theft by the company, Apple ignores that it is the creator, designer, and manufacturer of the iPhone. As such, *of course* Apple had superior knowledge to Turner and other consumers—and superior knowledge, as opposed to strictly exclusive knowledge, is all that is required. *See Anderson*, 2020 WL 6710101, at *12 ("The defendant need not have literally been the sole holder of the knowledge. It is generally sufficient for defendants to have had "superior knowledge" and for the information to have not been reasonably discoverable by the plaintiffs.").

Judge Koh has explained the rationale for superior knowledge:

> [C]ustomers cannot "be expected to seek facts which they h[ave] no way of knowing exist[ ]." *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices & Products Liab. Litig.,* 754 F. Supp. 2d 1208, 1227–28 (C.D. Cal. 2010). "A defendant has exclusive knowledge giving rise to a duty to disclose when 'according to the complaint, [defendant] knew of this defect while plaintiffs did not, and, given the nature of the defect, it was difficult to discover.'" *Herron v. Best Buy Co. Inc.,* 924 F. Supp. 2d 1161, 1175 (E.D. Cal.2013) (quoting *Collins,* 202 Cal. App. 4th at 256); *see also Marsikian v. Mercedes Benz USA, LLC,* No. 08–04876, 2009 WL 8379784, at *6 (C.D. Cal. May 4, 2009) (finding allegations showing defendant "was in a superior position to know" of an alleged defect "plainly sufficient"); *Johnson v. Harley–Davidson Motor Co. Grp., LLC,* 285 F.R.D. 573, 583 (E.D. Cal. 2012) (noting that courts look to "whether the defendant had 'superior' knowledge of the defect" and do not rigidly require literal exclusivity).

*Elias v. Hewlett-Packard Co.*, No. 12-CV-00421-LHK, 2014 WL 493034, at *9 (N.D. Cal. Feb. 5, 2014). Moreover, "even the presence of the information from publicly available sources—for instance, online—does not automatically foreclose an exclusive-knowledge claim. Instead, courts have looked to the nature of the product, the nature of the alleged omission, and the difficulty in reasonably finding the omitted information from sources other than the defendant." *Anderson*, 2020 WL 6710101, at *12 (citation omitted).

Given the intricate nature of the iPhone (a complex device), the nature of the alleged omission (failure to disclose a covert theft of consumers' data for Apple's own purposes), and the difficulty in finding the iPhone's capacity for such manipulation (and, later, the hidden means

of that manipulation) from sources other than Apple, the company's superior knowledge should prove dispositive here. Thus, like the cell phone consumers in *Donahue v. Apple, Inc.*, Turner had no way to ascertain the true functioning of his device; Apple had superior knowledge. 871 F. Supp. 2d 913, 926 (N.D. Cal. 2012).

### (ii)   Active concealment

Apple also protests that Turner has failed to plead active concealment. To plead such concealment, a plaintiff must allege more than nondisclosure alone; rather, an active attempt to hide is required. *See Anderson*, 2020 WL 6710101, at *13. The FAC meets this standard. It avers that Apple placed the Consuming Code in Uninstalled Apps, a peculiar location that would not raise consumer suspicion. FAC ¶¶ 3, 25–26. In other words, Apple took the affirmative step of *hiding* its data use in a place that made it difficult for Turner and other consumers to spot the means by which Apple was taking their data. Apple then remained silent. The FAC's contentions go above general allegations of concealment and present a reasonable inference of active concealment sufficient to state plausible claims.

### C.  Because Turner complains of Apple's omissions at the time he bought his iPhone, Turner's CLRA claim defeats dismissal.

Apple seeks dismissal of Turner's CLRA claim on the grounds that he fails to allege that any actionable misrepresentation or omission occurred at the time of sale of his iPhone. Apple's argument is that Turner must plead that Apple knew of the data issues with the September 2019 iOS 13 software update and that it made an actionable misrepresentation or omissions when Turner bought his iPhone in 2018. This argument strategically mischaracterizes Turner's claim and the claims of the putative class.

Turner is *not* basing his CLRA claim on an alleged omission arising from the subsequent download of free software. Rather, Turner's claim targets Apple's omissions *surrounding the purchase of the iPhone itself*; the iPhone did not perform as expected based on the specific functionality of the device delivered. In other words, Turner bought the iPhone in reliance on an expected level of functionality that Apple cultivated at the time of sale, and the iPhone failed to deliver that level of functionality. The iPhone did not perform as promised.

1      This is a dispositive nuance, because Apple is trying to conflate the focus of the claim (a

2 false promise of performance set up by a misrepresentation or omission) with a subsequent cause

3 of the failure to perform as promised (the software download). Turner's claim is thus similar to

4 the CLRA claim found in *In re iPhone 4S Consumer Litigation*, No. C 12-1127 CW, 2013 WL

5 3829653 (N.D. Cal. July 23, 2013). In that case, the plaintiffs brought a CLRA claim based on

6 Apple's misrepresentation about the iPhone 4. *Id.* at *13. Apple moved to dismiss, arguing that

7 the plaintiffs' claims related to the Siri software, rather than the iPhone 4S that ran that software.

8 *Id.* The court rejected Apple's argument, explaining that "Plaintiffs' CLRA claim is based on the

9 theory that a specific function of the iPhone 4S did not perform as advertised" and not on a

10 theory that the free apps downloaded onto that phone were deficient. *Id.* The Court correctly

11 focused on whether the goods (the iPhone 4S) performed as promised, not on the software on the

12 phone that affected that performance. *Id.*

13      This same rationale applies here. Turner's CLRA claim here is based on the omissions as

14 to functionality that Apple made at the time of sale, not on omissions that took place after the

15 sale occurred. *See, e.g.*, *Moore v. Apple Inc.*, 73 F. Supp. 3d 1191, 1200–01 (N.D. Cal. 2014)

16 (concluding reliance cannot be based on representations or omissions that took place after sale

17 occurred); *cf. Yastrab v. Apple, Inc.*, No. 5:14-cv-01974-EJD, 2015 WL 1307163, at *5 (N.D.

18 Cal. Mar. 23, 2015) (Davila, J.) (recognizing difference between defects in device and defects in

19 subsequent software). Turner alleges that Apple made numerous omissions concerning the

20 iPhone's characteristics, its particular standard, quality, or grade, and its cellular data use

21 capabilities that were central to the functioning of the iPhone and the decision to purchase. FAC

22 ¶¶ 68–72.

23      Stated more simply: the omitted defect is the capacity for data theft, not the mechanism to

24 capitalize on that capacity. Unlike a claim under the UCL, a claim under the CLRA indeed

25 requires knowledge of the undisclosed defect at the time of sale. *Beyer v. Symantec Corp.*, 333 F.

26 Supp. 3d 966, 981 (N.D. Cal. 2018). But it does not matter whether Apple knew, at the time of

27 the sale of the iPhone, that the iOS 13 would be the tool used to effectuate its theft of Turner's

28 data and the significant harm to the core functioning of his smartphone. The iOS 13 download

20

OPPOSITION TO MOTION TO DISMISS
Case No. 5:20-cv-07495-EJD

was simply the mechanism through which Apple exploited the prior omissions regarding functionality. That Apple concealed the *how* (*i.e.*, Consuming Code) behind the failure to meet the promises made until after the purchase cannot negate the actionable promises made *at the time of the sale*. The CLRA would be toothless in many respects if it permitted a seller to make a representation or engage in an omission as to quality or function and then covertly act to undo the promise made to the consumer. Such a result would run counter to the fact that "[t]he CLRA is to be 'liberally construed and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection.'" *Asghari v. Volkswagen Gro. of Am., Inc.*, 42 F. Supp. 3d 1306, 1314 (C.D. Cal. 2013) (quoting *Colgan v. Leatherman Tool Grp., Inc.*, 135 Cal. App. 4th 663, 680, 38 Cal. Rptr. 3d 36 (2006)).

### D.  Turner has pled sufficient actual damage under his trespass to chattels claim.

Apple's installation of the Consuming Code and the iOS updates that disguised that conduct easily support Turner's trespass to chattels claim. To state a plausible trespass to chattels claim, Turner must plead that (1) Apple intentionally and without authorization interfered with his possessory interest in his iPhone, and (2) Apple's unauthorized interference proximately caused damage. *See Apple Device Performance*, 349 F. Supp. 3d 434, 455 (N.D. Cal. 2018). An electronic communication will constitute trespass if it either damages the recipient's computer system or impairs its performance. *Intel Corp. v. Hamidi*, 30 Cal. 4th 1342, 1350–51 (2003). "The 'damages' element may be satisfied when the plaintiff pleads that the trespass 'impaired the condition, quality, or value of the personal property.'" *Apple Device Performance*, 349 F. Supp. 3d at 455. Whether a defendant "caused actual damage or impairment to [] computer systems [is] a question of fact more appropriate for summary judgment or trial than for a motion to dismiss." *WhatsApp Inc. v. NSO Group Techs. Ltd.*, 472 F. Supp. 3d 649, 686 (N.D. Cal. 2020).

Apple argues that its interference with Turner's iPhone was insufficiently substantial to be actionable. Mot. to Dismiss at 25. Again, Apple simply ignores the key factual allegations in the FAC. Turner alleges that Apple's conduct "caused Plaintiff and Class members to incur cellular data charges, suffer from reduced iPhone data speeds, and lose the use of cellular data

21

they purchased," damaging the "iPhones by causing them to perform more poorly than they would have performed absent the Consuming Code." FAC ¶¶ 94–95. Turner was able to mitigate his harm only "by turning cellular data off completely" even though doing so "severely limited the functionality of his iPhone." *Id.* ¶ 33. Apple's entire argument therefore hinges on the Court deeming inefficient speeds, stolen data, and loss of functionality not significant enough in the context of a motion to dismiss. This Court rejected similar arguments by Apple in *Apple Device Performance*, holding that the damages element of a trespass to chattels claim was satisfied by allegations that an iOS update impaired the functioning of iPhones by substantially slowing their processing speed. *See Apple Device Performance*, 347 F. Supp. 3d at 455. Similarly, allegations of deprivation or denial of access to phone lines were held to constitute actual harm. *Thrifty-Tel, Inc. v. Bezenek*, 46 Cal. App. 4th 1559, 1566 (1996).

Apple argues that this case is akin to *In re iPhone Application Litigation*, in which the Court held that plaintiffs failed to plead actionable harm for a trespass to chattels claim. 844 F. Supp. 2d 1040, 1069 (N.D. Cal. 2012). There, plaintiffs alleged that certain iPhone apps they downloaded used too much "bandwidth and storage space" and shortened their phones' battery life. *Id.* In other words, those plaintiffs downloaded apps and complained the apps were slightly larger than necessary for their intended purpose.

Here, Apple's interference was far greater, costlier, and deceptive—and it substantially impaired the iPhone's performance. Apple transmitted data exclusively over expensive cellular networks (consuming cellular data even when the iPhone was connected to Wi-Fi) and tried to evade detection by programming the iPhone cellular data meter to hide Apple's own transmissions (thereby subverting the intended purpose of the cellular data meter). These allegations are far more akin to the actionable harms discussed in *Apple Device Performance*, 347 F. Supp. 3d 434, 456 (N.D. Cal. 2018), and *Grace v. Apple*, No. 17-CV-0551-LHK, 2017 WL 3232464, at *12-13 (N.D. Cal. July 28, 2017) (distinguishing *In re iPhone Application Litigation*, and holding Apple's disabling the FaceTime feature on older iPhones was harm sufficient to state trespass to chattels claim).

## CONCLUSION

Because the FAC more than adequately pleads each of Turner's claims, the Court should deny Apple's Motion to Dismiss in its entirety.

Dated: March 25, 2021                    **TOUSLEY BRAIN STEPHENS PLLC**


By: */s/ Jason T. Dennett*_____

Kim D. Stephens, P.S.
Jason T. Dennett
Kaleigh N. Powell
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
Telephone: 206.682.5600
Fax: 206.682.2992
Email: kstephens@tousley.com
Email: jdennett@tousley.com
Email: kpowell@tousley.com

**GIBBS LAW GROUP LLP**

By: */s/ David M. Berger*_____

Eric H. Gibbs
David M. Berger
Alexander J. Bukac
505 14th Street, Suite 1110
Oakland, California 94612
Telephone:(510) 350-9700
Fax: (510) 350-9701
ehg@classlawgroup.com
dmb@classlawgroup.com
ajb@classlawgroup.com

*Attorneys for Plaintiff and the Putative Class*

## SIGNATURE ATTESTATION

Pursuant to Civil L.R. 5-1(i)(3), I hereby attest that I am the ECF user whose user ID and password are being utilized in the electronic filing of this document and concurrence in the filing of this document has been obtained from the signatories shown above.

*/s/ David M. Berger*_____