UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ALASDAIR TURNER,<br><br>  Plaintiff,<br><br>  v.<br><br>APPLE, INC.,<br><br>  Defendant. | Case No.   5:20-cv-07495-EJD<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**<br><br>Re: Dkt. No. 34 |

Plaintiff Alasdair Turner alleges that Defendant Apple, Inc.'s product, the iPhone, possesses software that, when activated, allows the phone to secretly consume cellular data for Defendant's benefit without the user's knowledge or consent. On March 4, 2021, Defendant moved to dismiss Plaintiff's complaint. *See* Motion to Dismiss First Amended Complaint ("Mot."), Dkt. No. 34. On March 25, 2021, Plaintiff filed an opposition, to which Defendant filed a reply. *See* Opposition to Motion to Dismiss ("Opp."), Dkt. No. 37; Apple's Reply in Support of its Motion to Dismiss ("Reply"), Dkt. No. 38. Having read the Parties' papers, the Court **GRANTS in part and DENIES in part** Defendant's motion to dismiss.

### I.   BACKGROUND

Plaintiff purchased his iPhone in 2018 from a Verizon store and, at that time, "reviewed the materials accompanying his purchase and the documentation necessary to complete setup of the device." *See* First Amended Class Action Complaint ("FAC") ¶¶ 1, 39, Dkt No. 30.

Sometime in September or October 2019, Plaintiff updated his iPhone with the iOS version 13 software. FAC ¶ 9. Defendant promised this update would bring "improvement across the entire system that make [] iPhone[s] even faster and more delightful to use." FAC ¶ 2. Plaintiff

Case No.: 5:20-cv-07495-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS
1

alleges, on behalf of himself and a putative class, that the update did not improve use. According to Plaintiff, Defendant designed the iPhone with the undisclosed capability to appropriate and consume users' cellular data for Defendant's own benefit. FAC ¶¶ 3, 42 ("Apple did not disclose—either in connection with iPhone purchases, installation of iOS 13, or otherwise—that it has the capability to surreptitiously use consumers' valuable cellular data exclusively for its own purposes, including for software development or other technical improvements."). Plaintiff alleges that Defendant activated this capability in 2019 by rolling out iOS 13, which caused iPhones to send significant amounts of data to Apple, routed Apple's data transfers exclusively over cellular networks, and exempted Apple's data transfers from normal settings favoring Wi-Fi connections. *See* FAC ¶ 5. Defendant did not disclose that iOS 13 contained hidden software code (the "Consuming Code") that caused devices running iOS 13 to consume cellular data without the user's input or control. FAC ¶ 4. To prevent users from noticing that Defendant's software was consuming data, Defendant mischaracterized the data-drain as coming from "Uninstalled Apps" on the iPhone's internal cellular data meter. FAC ¶¶ 42, 47. That is, Defendant's iOS 13 falsely suggested that the user was causing the data consumption by uninstalling applications. FAC ¶¶ 26–27.

The iOS 13 Software Licensing Agreement ("SLA") did not warn users that iOS 13 would cause a data drain, but instead advised users that they would be able to view and control how much data iOS 13 used. It provided that:

> You agree that many features, built-in apps, and Services of the Apple Software transmit data and could impact charges to your data plan, and that you are responsible for any such charges. You can view and control which applications are permitted to use cellular data and view an estimate of how much data such applications have consumed under Cellular Data Settings. In addition, Wi-Fi Assist will automatically switch to cellular when you have a poor Wi-Fi connection, which might result in more cellular data use and impact charges to your data plan.

FAC ¶ 18.

Because Plaintiff, and the putative class, had cellular data plans with a limited amount of data (*e.g.*, 5 GB per month), being able to predict and control their cellular data usage was

Case No.: 5:20-cv-07495-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS
2

imperative otherwise they could be charged exorbitant overage fees by their carriers. FAC ¶¶ 21–22. Plaintiff seeks relief because Defendant's iOS 13 impacted his ability to control his cellular data usage by, among other things, misclassifying how iOS 13 consumed data and making it impossible for users to disable iOS 13's use of data. Plaintiff argues that Defendant misappropriated his cellular data for its own use, and thus that he, and the class, are entitled to restitution for the value of the data Defendant consumed. FAC ¶ 83.

Plaintiff brings four claims: (1) First, he asserts a claim under the Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750 *et seq.*; (2) Second, he asserts a claim under the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*; (3) Third, he asserts a claim under the California Computer Data Access and Fraud Act ("CDAFA"), Cal Penal Code §§ 502 *et seq.*; and (4) Fourth, he asserts a claim for trespass to chattels. *See* FAC ¶¶ 63–96. Plaintiff seeks both monetary and injunctive relief.

Defendant argues that Plaintiff is barred from seeking injunctive relief since adequate remedies exist at law. Defendant further argues that Plaintiff lacks standing to pursue injunctive relief since he concedes that the alleged data misattribution issue was resolved in June 2020 and there are no facts in the complaint that suggest it will recur. With respect to Plaintiff's claims, Defendant seeks to dismiss his first, second, and fourth claims. Defendant argues that Plaintiff's UCL and CLRA claims must be dismissed because Plaintiff does not allege that he was exposed to or relied on omissions by Defendant at the time he purchased his iPhone. Defendant also argues that Plaintiff's trespass claim must be dismissed because Plaintiff has not alleged that he was deprived of the use of his iPhone for a substantial time or suffered a significant reduction in his iPhone's performance.

## II.   LEGAL STANDARD

A complaint must be dismissed for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) if the plaintiff either fails to state a cognizable legal theory or has not alleged sufficient facts establishing a claim to relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While the

Case No.: 5:20-cv-07495-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS
3

Court must accept well-pled facts as true, "conclusory allegations without more are insufficient to defeat a motion to dismiss." *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 810 (9th Cir. 1988). The Court cannot assume the truth of legal conclusions merely because they are pled in the form of factual allegations, nor should it accept as true allegations contradicted by judicially noticeable facts. *Iqbal*, 556 U.S. at 677–79; *Twombly*, 550 U.S. at 555 ("[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than the labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." (citations omitted) (alterations in original)).

Claims grounded in fraud, like the omissions pled in this case, are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). *Moore v. Apple*, 73 F. Supp. 3d 1191, 1198 (N.D. Cal. 2014). Rule 9(b) requires that a fraud-based claim "state with particularity the circumstances constituting fraud." *Id.* (quoting Fed. R. Civ. P. 9(b)). To satisfy this heightened standard, the allegations must be specific enough "to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985). Thus, claims sounding in fraud must allege "an account of the 'time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations.'" *Moore*, 73 F. Supp. 3d at 1198 (quoting *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (per curiam)). The plaintiff must set forth "what is false or misleading about a statement, and why it is false." *Id.*; *see also Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) ("A party alleging fraud must 'set forth more than the neutral facts necessary to identify the transaction.'" (citation omitted)).

**III.   DISCUSSION**

As noted above, Plaintiff asserts four claims for relief: (1) violation of the CLRA; (2) violation of the UCL; (3) violation of the CDAFA; and (4) trespass to chattels. FAC ¶¶ 63–96. Defendants argue that Counts One, Two, and Four should be dismissed and that any request for

equitable relief must also be dismissed.  Mot. at 5.

### A.  Claims for Restitution and Injunctive Relief

Among other remedies, Plaintiff seeks restitution and an injunction for Defendant's allegedly unlawful conduct under the UCL and the CLRA.  Defendant argues that these claims should be dismissed because Plaintiff cannot seek equitable relief since Plaintiff has an adequate remedy at law.  Mot. at 5–6.  Plaintiff contends that he can pursue equitable relief since (1) an injunction is the only way to address Defendant's continued failure to disclose its iPhone defects, namely that it possesses software that allows Defendant to consume user's data without notice, and (2) his restitution claims are not commensurate with his claims for damages.

Under Ninth Circuit law, a plaintiff must establish that they lack an "adequate remedy at law before securing equitable restitution for past harm under the UCL and CLRA."  *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020); *see also Schroeder v. United States*, 569 F.3d 956, 963 (9th Cir. 2009) ("[E]quitable relief is not appropriate where an adequate remedy exists at law.").  *Sonner* concerned equitable restitution; however, this Court and several others have held that *Sonner* also applies to injunctive relief.  *See In re MacBook Keyboard Litig.*, 2020 WL 6047253, at *3 (N.D. Cal. Oct. 13, 2020) (collecting cases).

Plaintiff must show that monetary damages for the past harm caused by iOS 13 are an inadequate remedy for the future harm that an injunction under California consumer protection law is aimed at.  Plaintiff's remedy at law, damages, is retrospective and can only remedy Plaintiff for the harm already incurred.  An injunction, on the other hand, is prospective and would remedy any threat of future harm.

The Court agrees with Plaintiff that legal remedies alone are inadequate.  Defendant urges that the Court read the complaint to allege that the Consuming Code caused the alleged data depletion and that after the iOS 14 update, Defendant lost its ability to deplete user's data. Plaintiff contends that an alternative reading is more appropriate.  In Plaintiff's view, the complaint alleges that iPhones contained general software that allowed Defendant to use user's data and that the Consuming Code "triggered" this software.  Under Plaintiff's reading of the

Case No.: 5:20-cv-07495-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS
5

1  complaint, an injunction is necessary because all iPhones contain software that allow Defendant to
2  misappropriate user data, regardless of past or future updates.  Viewing the allegations in the light
3  most favorable to Plaintiff, the complaint contains allegations that Defendant could again
4  reintroduce software that "triggered" the embedded ability to misappropriate user data for
5  Defendant's benefit.  *See, e.g.*, FAC ¶ 3 ("Apple did not disclose—either in connection with
6  iPhone purchases, installation of iOS 13, *or otherwise*—that it has the capability to surreptitiously
7  use consumer's valuable cellular data exclusively for its own purposes, including for software
8  development or other technical improvements." (emphasis added)).  Thus, it is not enough that
9  Defendant voluntarily ceased use of iOS 13.  While Plaintiff can be compensated for the *past* harm
10 caused by iOS 13, there is no adequate legal remedy for the threat that Defendant may again use
11 its embedded software to misappropriate user data.  An injunction would remedy this risk by
12 ensuring that consumers, including Plaintiff, could rely on Defendant's future representations
13 regarding cellular data consumption.  *See IntegrityMessageBoards.com v. Facebook, Inc.*, 2020
14 WL 6544411, at *6, *8 (N.D. Cal. Nov. 6, 2020) (finding that plaintiff lacked an adequate remedy
15 at law for the risk of future harm); *Zeiger v. WellPet LLC*, 526 F. Supp. 3d 652, 687 (N.D. Cal.
16 2021) ("Damages would compensate Zeiger for his past purchases.  An injunction would ensure
17 that he (and other consumers) can rely on WellPet's representations in the future.  Accordingly,
18 retrospective damages are not an adequate remedy for that prospective harm."); *McGill v.*
19 *Citibank, N.A.*, 2 Cal. 5th 945, 955 (2017) (explaining that UCL and CLRA injunctive relief is
20 designed to prevent "future harm").
21       Likewise, restitution is required because legal damages do not cover the full value of the
22 harm alleged.  Pursuant to the complaint, Plaintiff had to pay Verizon, his carrier, $15 for one
23 additional GB of data because he exceeded his 5GB plan due to Defendant's misappropriation of
24 cellular data.  FAC ¶ 31.  This does not address the full range of damages experienced by Plaintiff
25 and the putative class, namely individuals who did not exceed their data plan, but whose data was
26 consumed by Defendant.  *See* FAC ¶¶ 31–34.  Indeed, as Plaintiff notes, every time Defendant
27 appropriated *any amount of data*, the data was unavailable to users, even though users had a right
28 Case No.:   5:20-cv-07495-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS
6

1 to use (or not to use) the data that they paid for. Opp. at 6. Accordingly, the restitution claim
2 addresses a different harm because it encompasses the full value of misappropriated data, not just
3 the overage charges users paid to their carriers. *Cf. Sonner*, 971 F.3d at 844 ("Sonner fails to
4 explain how the same amount of money for the exact same harm is inadequate or
5 incomplete . . . ."); *Inline, Inc. v. Apace Moving Sys., Inc.*, 125 Cal. App. 4th 895, 903 (2005) ("On
6 one hand, damages describes a payment made to compensate a party for injuries suffered. In
7 contrast, a monetary payment is more properly characterized as restitutionary than compensatory
8 in nature when the defendant is asked to return something he wrongfully received . . . ." (quotation
9 marks and citation omitted) (cleaned up)). Here, Plaintiff and the putative class seek to be
10 reimbursed for the *value* of the data that Defendant wrongfully received. Thus, restitution is an
11 appropriate remedy in this case.

12 In the alternative, Defendant argues that Plaintiff cannot seek restitution under the UCL for
13 funds paid to a third party, *i.e.* Verizon. Mot. at 6–7. This misunderstands Plaintiff's complaint.
14 As Plaintiff notes in its opposition, it does not seek damages from Verizon, but instead seeks
15 compensation from Defendant for the value of the misappropriated data. *See* Opp. at 7; FAC
16 ¶¶ 40, 70, 72, 82 (alleging that Plaintiff suffered economic injury when Defendant
17 misappropriated his property, *i.e.*, cellular data, for its own benefit); *cf. Phillips v. Apple Inc.*, 725
18 F. App'x 496, 499 (9th Cir. 2018) ("Plaintiffs did not allege that Apple received money or
19 property, indirectly or otherwise, from their overage payments.").

20 For these reasons, the Court disagrees with Defendant that Plaintiff's claims for restitution
21 and injunctive relief fail.

## B. Standing to Pursue Claim for Injunctive Relief

23 Plaintiff only seeks injunctive relief under his CLRA claim. *See* FAC ¶ 73. The Court
24 agrees with Defendant that Plaintiff does not have standing to pursue an injunction. In *Davidson*
25 *v. Kimberly-Clark Corporation*, the Ninth Circuit settled a divide among the district courts of this
26 Circuit regarding injunctive relief in UCL and CLRA cases. 889 F.3d 956 (9th Cir. 2018). It held
27 that "a previously deceived consumer may have standing to seek an injunction against false

Case No.: 5:20-cv-07495-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS
7

advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase." *Id.* at 969.

The court discussed two situations that would be sufficient to confer standing. "In some cases, the threat of future harm may be the consumer's plausible allegations that she will be unable to rely on the product's advertising or labeling in the future, *and so will not purchase the product although she would like to*." *Id.* at 969–70 (emphasis added). "In some other cases, the threat of future harm may be the consumer's plausible allegations that she might purchase the product *in the future*, despite the fact it was once marred by false advertising or labeling, as she may reasonably, but incorrectly, assume the product was improved." *Id.* at 970 (emphasis added).

Neither scenario discussed in *Davidson* is satisfied here. As alleged in the complaint, Plaintiff has never stopped using his iPhone and has continued to update his iPhone with new versions of iOS. *See* FAC ¶¶ 41, 62. Therefore, he has not suffered a harm that requires injunctive relief. The scenarios in *Davidson* share a common theme; the past harm must somehow impact the plaintiff's future use of the product. That has not happened here. The Court concludes that Plaintiff would be unable to amend his complaint to demonstrate standing for injunctive relief. Accordingly, the Court agrees with Defendant that Plaintiff lacks standing to pursue an injunction and **dismisses Plaintiff's injunctive CLRA claim without leave to amend**. *See Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008) (leave to amend not required where "amendment would be futile"). However, because Plaintiff has expressed an intent to pursue damages under the CLRA, the Court will allow Plaintiff leave to amend his complaint to pursue a CLRA damages claim.

### C. Standing to Pursue Fraud Claims

Plaintiff's CLRA[1] and UCL claims rely on the allegations that Defendant omitted facts from users regarding Apple's allegedly nonconsensual consumption of cellular data. FAC ¶¶ 68–70, 80–81. Defendant argues that Plaintiff lacks standing to pursue these claims because he has

---

[1] Because the Court agrees with Defendant's that Plaintiff lacks standing to pursue his injunctive CLRA claim, the Court's discussion is limited to Plaintiff's UCL claim.

Case No.: 5:20-cv-07495-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS
8

not alleged that he relied on any misstatement or omissions before or at the time he purchased his iPhone in 2018. The Court agrees.

To have standing, "Plaintiff must allege that he has suffered a legally cognizable injury that was caused by [] conduct that allegedly amounts to a violation of" the UCL. *See Cullen v. Netflix, Inc.*, 2013 WL 140103, at *4 (N.D. Cal. Jan. 10, 2013). Furthermore, "actual reliance is required to demonstrate causation for purposes of Article III standing when the plaintiffs assert that their injury is the result of deceptive misrepresentations or omissions." *Phillips v. Apple Inc.*, 2016 WL 1579693, at *6 (N.D. Cal. Apr. 19, 2016). A plaintiff cannot demonstrate reliance based on statements made after an alleged purchase. *Cullen*, 2013 WL 140103, at *4 (holding that later statements "cannot give rise to standing" based on a purchase made "well before the statements which Plaintiff alleges caused him harm were made"); *see also Yastrab v. Apple Inc.*, 2015 WL 1307163, at *5 (N.D. Cal. Mar. 23, 2015) ("Plaintiff cannot plausibly assert that he relied on any promotional material related to iOS 7 for this purpose since . . . . Plaintiff purchased his phone more than one year earlier . . . .").

Plaintiff must allege that he saw and reviewed materials that could have contained the allegedly omitted disclosure (*i.e.*, that iPhones contained an embedded ability to consume cellular data or that iOS 13 "activated" this ability) before he purchased his iPhone in 2018. Plaintiff has not met that burden. Plaintiff alleges that Defendant failed to adequately disclose that it had designed his iPhone with the ability to co-opt his cellular data for its own use. FAC ¶ 47. However, Plaintiff does not allege that he reviewed materials *before* purchasing his iPhone. Instead, his complaint alleges that when he purchased his iPhone in 2018, "he received and reviewed the materials accompanying his purchase and the documentation necessary to complete setup of the device." FAC ¶ 39. *Cf. Anderson v. Apple Inc.*, 500 F. Supp. 3d 993, 1006 (N.D. Cal. 2020) (finding that the plaintiffs had met the standing requirement where "the plaintiffs reviewed marketing and similar methods about the iPhone XR *prior* to making their purchase," such that there could be a "reasonable inference that they would have encountered the disclosure had it been made" (emphasis added)). Accordingly, the Court **GRANTS** Defendant's motion to dismiss

Case No.: 5:20-cv-07495-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS
9

Plaintiff's UCL claim for lack of standing **with leave to amend.**

### D. Trespass to Chattel

To state a plausible trespass to chattels claim, Turner must plead that (1) Apple intentionally and without authorization interfered with his possessory interest in his iPhone, and (2) Apple's unauthorized interference proximately caused damage. *See In re Apple Inc. Device Performance Litig.*, 347 F. Supp. 3d 434, 455 (N.D. Cal. 2018). An electronic communication will constitute trespass if it either damages the recipient's computer system or impairs its performance. *Intel Corp. v. Hamidi*, 30 Cal. 4th 1342, 1350–51 (2003). "The 'damages' element may be satisfied when the plaintiff pleads that the trespass 'impaired the condition, quality, or value of the personal property.'" *Apple Device Performance*, 349 F. Supp. 3d at 455. Whether a defendant "caused actual damage or impairment to [] computer systems [is] a question of fact more appropriate for summary judgment or trial than for a motion to dismiss." *WhatsApp Inc. v. NSO Group Techs. Ltd.*, 472 F. Supp. 3d 649, 686 (N.D. Cal. 2020).

Defendant argues that Plaintiff's trespass to chattel claim should be dismissed because Defendant's interference with Plaintiff's iPhone was too insignificant to be actionable. Mot. at 25. However, this ignores allegations in the complaint that Defendant's use of the Consuming Code greatly impacted Plaintiff and the putative class members' use of their iPhones. For example, Defendant's conduct caused Plaintiff and the putative class members to incur cellular data charges, suffer from reduced iPhone data speeds, and lose cellular data that they purchased. FAC ¶¶ 94–95; FAC ¶ 33 (alleging that Plaintiff was only able to mitigate the harm by "turning cellular data off completely" even though doing so "severely limited the functionality of his iPhone"). This is far from an insubstantial interference. These allegations show that Defendant intentionally interfered with a possessory interest and caused damages. Plaintiff has met his pleading burden. *Accord Apple Device Performance*, 347 F. Supp. 3d at 455–56 (holding that plaintiffs adequately pled a trespass to chattels claim where the iOS software at issue was alleged to have impaired the functionality of the plaintiff's iPhones). Accordingly, the Court **DENIES** Defendant's motion to dismiss Plaintiff's trespass to chattels claim.

Case No.:  5:20-cv-07495-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS
10

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is **granted in part** and **denied in part.** When dismissing a complaint for failure to state a claim, a court should grant leave to amend "unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith,* 203 F.3d 1122, 1127 (9th Cir. 2000). Although the Court has determined that Plaintiff fails to plead facts that demonstrate standing to pursue his fraud claims, it is possible Plaintiff can cure these allegations by alleging, among other things, more facts as the actions he took before he purchased his iPhone in 2018. Accordingly, because Plaintiffs may salvage their Complaint, the Court finds amendment would not be futile as to these claims. The Court reaffirms its decision to dismiss Plaintiff's claim for injunctive relief with prejudice.

Should Plaintiff choose to file an amended complaint, he must do so by **March 10, 2022**. Failure to do so, or failure to cure the deficiencies addressed in this Order, will result in dismissal of the dismissed claims. Plaintiff may not add new claims or parties without leave of the Court or stipulation by the parties pursuant to Federal Rule of Civil Procedure 15.

The Case Management Conference scheduled for February 24, 2022, is **CONTINUED** to **March 31, 2022**, with an updated joint case management statement due by **March 21, 2022**.

**IT IS SO ORDERED.**

Dated: February 14, 2022

EDWARD J. DAVILA
United States District Judge

Case No.: 5:20-cv-07495-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS
11