UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ALASDAIR TURNER,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>APPLE, INC.,<br><br>　　　　　Defendant. | Case No.　5:20-cv-07495-EJD<br><br>**ORDER DENYING MOTION FOR LEAVE TO AMEND; DENYING AS MOOT MOTION TO STAY DISCOVERY; DIRECTING PARTIES TO MEET AND CONFER RE CASE SCHEDULE**<br><br>Re: ECF Nos. 89, 91, 100 |

Nearly four years ago, Plaintiff Alasdair Turner filed this putative class action against Defendant Apple, Inc. In his original complaint, Turner alleged that one of Apple's mobile operating systems (iOS 13) contained code that caused iPhones to transmit cellular data without users' approval or knowledge. Turner claimed that this excess data consumption increased users' costs and reduced the amount of data available to users under their cellular service plans. After the parties completed pleading-stage motion practice, the Court entered a case schedule setting May 23, 2022 as the pleading amendment deadline. Now, two years after the deadline for amendment has passed, Turner moves to amend his complaint, arguing that newly received discovery justifies expanding the complaint. Through his proposed amendment, Turner aims to accomplish three goals: (1) to provide further detail about how the allegedly offending iOS code worked; (2) to add a claim for conversion of users' cellular data; and (3) to expand the class definition to include iOS versions other than iOS 13. Mot. for Leave to File Third Am. Compl. ("Mot."), ECF No. 89. The parties have fully briefed the motion for leave to amend. Apple's Omnibus Opp'n ("Opp'n"), ECF No. 98; Turner's Omnibus Reply ("Reply"), ECF No. 110.

Case No.: 5:20-cv-07495-EJD
ORDER RE AMENDMENT, DISCOVERY STAY & CASE SCHEDULE
1

After considering the parties' submissions and holding a hearing on the matter, the Court concludes that Turner has not shown good cause for amending the complaint. As such, the Court DENIES Turner's motion for leave to file a Third Amended Complaint. Having denied Turner's motion for leave, the Court also DENIES AS MOOT Apple's motion to stay discovery pending resolution of Turner's motion and DIRECTS the parties to meet and confer regarding the case schedule moving forward.

## I.    BACKGROUND

On October 24, 2020, Turner filed his original complaint. Compl., ECF No. 1. In that complaint, Turner alleged that iOS 13 contained "hidden software code" that caused iPhones "to surreptitiously transmit cellular data, increasing the user's overall cellular data consumption without his or her knowledge, without any change in the user's usual behavior, and without providing the user any identifiable benefit." *Id.* ¶¶ 3–4. Turner sought to bring suit on behalf of iPhone users who had installed iOS 13 versions up to version 13.6, and who used a limited cellular data plan while those iOS 13 versions were installed. *Id.* ¶ 44.

Following motion practice, Turner filed the operative complaint on March 10, 2022. Second Am. Compl., ECF No. 54. In doing so, Turner did not change his core allegations or the scope of his claims. Turner continued to allege that iOS 13 contained "hidden software code" that wrongfully used cellular data, and he continued to assert his claims on behalf of the same putative class that he identified in his original complaint. *Id.* ¶¶ 3–4, 54.

Subsequently, the Court entered a case management order setting May 23, 2022 as the deadline to amend the pleadings. Case Management Order, ECF No. 57.

From that point on, the docket in this case reflects little activity other than the occasional stipulation to modify the case schedule. Although Turner served his first set of document requests on November 19, 2021, Decl. of David M. Berger ("Berger Decl.") ¶ 6, ECF No. 89-1, it was not until July 2023 that the parties filed their first discovery disputes. Joint Discovery Letter Briefs, ECF Nos. 69, 70. What is more, those disputes were not over any substantive discovery responses. Rather, almost a year and a half after Turner first served his document requests, the

1  parties still had not agreed to a protective order or ESI protocol (which are typically agreed upon
2  at the start of discovery, prior to making any document productions) and needed court assistance
3  to make those preliminary agreements.  *Id.*
4  On August 14, 2023, the parties finally entered a protective order and ESI protocol.  Stip.
5  Protective Order, ECF No. 79; ESI Stip. & Order, ECF No. 80.  Soon after, Apple began making
6  rolling document productions as the parties had agreed, beginning with documents from Apple's
7  "Radar" bug-tracking system.  Apple made its first production on August 17, 2023 and then made
8  four additional productions the following month.  Berger Decl. ¶ 19; Decl. of Katie Viggiani
9  ("Viggiani Decl.") ¶¶ 34–36, ECF No. 98-1.  All told, these initial productions contained
10 approximately 100,000 pages of documents.  Berger Decl. ¶ 20; Viggiani Decl. ¶ 37.  Over the
11 next few months, the parties engaged in further meet and confers to discuss additional search
12 terms and custodians.  Viggiani Decl. ¶ 39–45.  After agreeing to some search terms and
13 custodians on February 20, 2024, Apple began to collect and review documents hitting on those
14 criteria.  *Id.* ¶ 45.  Apple made its first production from this new set of documents on March 21,
15 2024, and later made productions on April 30, and May 16 as well.  *Id.* ¶ 46, 48; Berger Decl.
16 ¶ 23.
17 The day after Apple made its March 21, 2024 production, Turner's counsel informed
18 Apple that Turner intended to seek leave to amend his complaint, including by adding a claim for
19 conversion.  Viggiani Decl. ¶ 4.  Apple did not consent to the proposed amendment because the
20 pleading amendment deadline had passed almost two years ago, but the parties agreed to modify
21 the case schedule to accommodate Turner's anticipated motion for leave to amend.  As part of that
22 schedule modification, Turner agreed to file his anticipated motion for leave to amend by April 12,
23 2024.  Stip. & Order to Continue Case Sch., ECF No. 87.  April 12 passed without Turner filing a
24 motion for leave to amend, requesting an extension of that deadline, or otherwise informing Apple
25 or the Court about his intentions.  *See* Viggiani Decl. ¶¶ 7–8.  It was not until a month later, on
26 May 23, 2024, that Turner's counsel reached out to Apple again, emailing a proposed amended
27 complaint.  *Id.* ¶ 8.  And it was not until three weeks after *that* date, on June 14, 2024, that Turner
28 

Case No.: 5:20-cv-07495-EJD
ORDER RE AMENDMENT, DISCOVERY STAY & CASE SCHEDULE
3

1  filed his motion for leave to amend with the Court.  *See* Mot.

2  In conjunction with his motion for leave to amend, Turner moved to extend case deadlines,
3  including the deadline to file a class certification motion, then set for July 1, 2024.  Admin. Mot.
4  to Enlarge Time, ECF No. 91.  Apple then moved to stay discovery pending resolution of Turner's
5  motion for leave to amend.  Mot. to Stay Discovery, ECF No. 100.

**II.  LEGAL STANDARD**

When a party moves to amend her pleadings after the court-ordered deadline for amendments has passed, the party must first satisfy Rule 16(b)'s good cause standard.  *Kamal v. Eden Creamery, LLC*, 88 F.4th 1268, 1277 (9th Cir. 2023).  This standard "primarily considers the diligence of the party seeking the amendment."  *In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 737 (9th Cir. 2013) (quoting *Johnson v. Mammoth Recreations, Inc.*, 975 F.3d 604, 609 (9th Cir. 1992)).  Under this approach, "the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion," but lack of diligence by the party seeking amendment is enough to defeat a motion for leave to amend.  *Kamal*, 88 F.4th at 1277 (quoting *Johnson*, 975 F.2d at 609).  If the party seeking amendment demonstrates good cause, she must then show that amendment is proper under Rule 15.  *Chang v. Cashman*, --- F. Supp. 3d ----, No. 22-cv-02010-AMO, 2024 WL 1160909, at *3 (N.D. Cal. Mar. 18, 2024) (citation omitted).

**III.  DISCUSSION**

Turner's motion for leave to amend fails at Rule 16(b).  He seeks leave to amend for three purposes: (1) to provide more detail about how the challenged iOS code works; (2) to add a claim for conversion of users' cellular data, and (3) to expand the class definition to include iOS versions other than iOS 13.  *See* Proposed Third Am. Compl., ECF No. 89-3.  But Turner has not shown good cause for any of those proposals.

***First***, amending the complaint to plead more detail about the challenged iOS code contributes nothing to this case beyond delay.  The purpose of a complaint is not to preview a plaintiff's trial narrative or evidence; rather, the complaint serves to "give the defendant fair notice

United States District Court
Northern District of California

of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). Here, Apple is already on notice of Turner's claims, and Turner's proposed details would not change the scope of those claims.[1] Four years into this litigation, it is unnecessary to add further detail to a complaint that already survived a motion to dismiss when that detail would be inconsequential. *Cf. McMillian v. Sanofi-Aventis U.S. LLC*, No. 23-cv-05780-SI, 2024 WL 1117049, at *5 (N.D. Cal. Mar. 13, 2024) ("There is no need to amend the complaint at this stage to add a claim for punitive damages, where the operative complaint already seeks punitive damages."). In any case, as the Court elaborates on below, Turner has not shown the level of diligence in prosecuting his case that is necessary to satisfy good cause, either.

***Second***, "even under Rule 15's liberal standard, 'late amendments to assert new theories are not reviewed favorably when the facts and the theory have been known to the party seeking amendment since the inception of the cause of action.'" *Kamal*, 88 F.4th at 1278–79 (quoting *Acri v. Int'l Ass'n of Machinists & Aerospace Workers*, 781 F.2d 1393, 1398 (9th Cir. 1986)). Turner had all the necessary information to raise a conversion claim in his original complaint, so there is no good cause to allow Turner to add such a claim this late in the case.

Here, Turner argues that a conversion claim would not have been viable until a recent Ninth Circuit decision—*Taylor v. Google, LLC*, No. 22-16654, 2024 WL 837044 (9th Cir. Feb. 28, 2024)—changed the law. But *Taylor* did not change the law. For one, *Taylor* is a non-precedential memorandum decision that, by rule, cannot establish new law. Ninth Circuit Rule 36-3(a). More fundamentally, Turner is wrong to believe that claims for conversion of cellular data were barred prior to *Taylor*. Turner argues that, before the Ninth Circuit's decision in *Taylor*, "there was no precedent on which [he] could rely to plead a claim for conversion of cellular data in federal court." Reply 2. In support, Turner cites to one of the *Taylor* district court's orders, where the district court observed that it "ha[d] not found[] cases addressing the question of

---

[1] To the extent Turner is concerned Apple might object at trial that some evidence falls outside the scope of the complaint, the Court finds that evidence showing details about the challenged iOS code's operation falls well within the scope of the complaint. And even if Apple were able to convince the Court otherwise, Turner would still be able to introduce that evidence by seeking amendment at trial under Rule 15(b).

Case No.: 5:20-cv-07495-EJD
ORDER RE AMENDMENT, DISCOVERY STAY & CASE SCHEDULE
5

1   whether cellular service subscribers have a property interest in their cellular data allowances"
2   before ultimately concluding that cellular data allowances are not personal property subject to
3   conversion. *Taylor v. Google LLC*, No. 20-cv-07956-VKD, 2021 WL 4503459, at *7 (N.D. Cal.
4   Oct. 1, 2021).

5         But Turner's citation to the district court order only illustrates why he should have raised
6   his conversion claim earlier. That is because the *Taylor* plaintiffs raised a claim for conversion of
7   cellular data even though there was little to no case law addressing that issue. Plaintiffs are well
8   within their rights to bring novel claims that seek to apply existing law in new ways. Doing so is
9   especially common when dealing with technology issues like those that Turner raises in this case.
10  For example, given recent developments in AI technology, plaintiffs around the country have
11  brought claims asserting that various AI companies wrongly used the plaintiffs' works to train AI
12  models, even though such claims had not been brought before. *E.g.*, *Millette v. OpenAI, Inc.*, No.
13  24-cv-04710, ECF No. 1 (N.D. Cal. Aug. 2, 2024). So, Turner did not need to find a case
14  explicitly *approving* claims for conversion of cellular data before making such a claim. If there
15  was no precedent squarely *foreclosing* conversion (there was not), and Turner had a colorable
16  argument for raising conversion (he did), conversion was fair game in his original complaint.

17        Rule 11 further reinforces this approach. Specifically, Rule 11 allows a plaintiff's counsel
18  to raise "claims, defenses, and other legal contentions [that] are warranted . . . by a nonfrivolous
19  argument for extending, modifying, or reversing existing law or for establishing new law." Fed.
20  R. Civ. P. 11(b)(2). Although there was no case law directly on point when Turner filed his
21  original complaint, Turner has not pointed to any precedent that would have rendered a claim for
22  conversion of cellular data frivolous. At most, conversion of cellular data was an open issue.[2]
23  Therefore, Turner has not shown good cause to add a conversion claim.

24        ***Finally***, Turner may not expand the class definition because he did not diligently pursue

---

[2] To the extent that Turner argues the *Taylor* district court decision foreclosed his conversion claim, the Court rejects that argument because district court decisions are non-precedential. A single district court decision also hardly shows that the weight of authority was against a conversion claim. Regardless, the *Taylor* district court decision came out in October 2021, well after Turner had filed both his original and first amended complaints. *Taylor*, 2021 WL 4503459.

the discovery justifying the expanded definition and because he did not act diligently to amend his complaint once he received that discovery.

Turner contends that discovery shows the challenged code was present in several iOS versions other than iOS 13, extending several versions earlier than iOS 13 and potentially continuing in versions after iOS 13. Mot. 7. But Turner first served the document requests relevant to his proposed amendment in November 2021. Berger Decl. ¶ 6. While Turner proceeded to participate in a multi-year string of meet and confers with Apple regarding those document requests, Viggiani Decl. ¶¶ 16–19, 21–22, 25–29, neither party made any discovery productions during that period because the parties had not agreed to a protective order or ESI protocol. It was not until August 2023, following court intervention, that the parties agreed to a protective order and ESI protocol. Stip. Protective Order; ESI Stip. & Order. Only then, some two years after Turner served his first document requests, did document productions begin flowing. Berger Decl. ¶ 19.

It is baffling that it took the parties two years to agree to a protective order and to begin making document productions. Predictably, each side faults the other for the delay. But discovery is a collaborative process, and neither side can fully escape responsibility for a failure of this magnitude. Still, "the burden lies with the plaintiff to prosecute his case properly," *Kamal*, 88 F.4th at 1277 (cleaned up) (quoting *Johnson*, 875 F.2d at 610), and Turner had ample opportunity to move discovery forward more expeditiously. Namely, at some point during the two years of meet and confers, when there had been no tangible results despite months of discovery negotiations, Turner should have filed a motion to compel to push the case forward. Turner did not do so.

At hearing, Turner explained that he avoided filing discovery motions because he felt that the parties were making progress in discovery negotiations and did not want to burden the Court with additional, unnecessary work. Turner's point is well-taken, and the Court trusts that Turner was motivated by a good-faith desire to avoid burdening the Court. However, good faith is not good cause. Although it is best practice to negotiate discovery compromises without court

Case No.: 5:20-cv-07495-EJD
ORDER RE AMENDMENT, DISCOVERY STAY & CASE SCHEDULE
7

1    involvement, when the parties reach an impasse—or when, as here, progress on discovery disputes

2    is too slow—the parties *should* move for relief so that the case may proceed without excessive

3    delay.  Turner blew past that point when he allowed discovery negotiations to drag on for nearly

4    two years without ever filing a motion to compel.  So, the Court finds that Turner was not diligent

5    in pursuing the discovery that forms the basis of his motion for leave to amend.

6          Moreover, the Court finds that Turner did not diligently move to amend even after he had

7    received the discovery supporting his proposed amendment.  By at least March 22, 2024, Turner

8    was aware that there were potential grounds to amend his complaint because his counsel reached

9    out to Apple asking if Apple would consent to amendment.  Viggiani Decl. ¶ 4.  While Apple did

10   not consent, the parties agreed to set April 12, 2024 as the deadline for Turner to seek leave to

11   amend.  Stip. & Order to Continue Case Sch., ECF No. 87.  This was more than a private

12   agreement between the parties, though.  The parties asked the Court to approve a stipulation to that

13   effect, giving the April 12 deadline the force of a Court order.  *Id.*  However, Turner did not move

14   for leave to amend until June 14, 2024, two months after the deadline.  *See* Mot.

15         Turner has not provided a satisfying explanation for missing the April 12 deadline.  At

16   hearing, Turner argued that after he agreed to the deadline, Apple made additional document

17   productions, and that these additional productions required Turner to conduct further document

18   review so that he could be sure his proposed amendments were rigorously supported by evidence.

19   But that explanation does not quite add up.  Apple made a document production on March 21,

20   2024, Berger Decl. ¶ 23, and Turner was apparently able to recognize by the next day that

21   amendment might be appropriate.  Viggiani Decl. ¶ 4.  Apple's next document production, though,

22   was not until April 30, 2024.  Berger Decl. ¶ 23.  Nothing in Apple's April 30 production could

23   have justified Turner's failure to meet the April 12 deadline since Turner received those

24   documents only after the April 12 deadline had already passed.  Nor can Turner plausibly claim

25   that review of Apple's March 21 production delayed his motion for leave to amend.  By the time

26   Turner stipulated to the April 12 deadline, he already had Apple's March 21 production, so he

27   should have known how long it would take to fully review those documents before agreeing to the

28   Case No.:  5:20-cv-07495-EJD
ORDER RE AMENDMENT, DISCOVERY STAY & CASE SCHEDULE
8

1  April 12 deadline.

2  Even assuming Turner had good reasons for missing the April 12 deadline, it is wholly inappropriate to ignore the deadline without saying a word to either Apple or the Court. Turner should have asked Apple if it consented to extend the deadline, or moved the Court for an extension, explaining the reasons why he could not meet the deadline. Instead, Turner kept silent, saying nothing to Apple about his late amendment until May 23, 2024, Viggiani Decl. ¶ 8, and giving no indication to the Court that he still planned to move for leave to amend until he filed his motion on June 14, 2024. *See* Mot.

Turner's failure to meet his own deadline is, by itself, enough to warrant denying his motion for leave to amend. When that failure is combined with Turner's lack of diligence in discovery, the Court finds that Turner has clearly not shown good cause.[3]

## IV. CONCLUSION

For the reasons above, the Court finds that Turner has failed to show good cause for amending his complaint and therefore DENIES Turner's motion for leave to amend. As a result, the Court also DENIES AS MOOT Apple's motion to stay discovery pending resolution of Turner's motion to amend. The Court DIRECTS the parties to meet and confer regarding a case schedule moving forward, and to file a stipulated case schedule, or a joint statement containing the parties' respective scheduling proposals, within **fourteen (14) days** of this Order.

**IT IS SO ORDERED.**

Dated: August 30, 2024

EDWARD J. DAVILA
United States District Judge

---

[3] While not necessary for the Court's decision because Turner has not shown diligence, *see Kamal*, 88 F.4th at 1277, the Court also finds that Turner's proposed amendment would prejudice Apple. Expanding the class definition would expand the class period by years. Such expansion would potentially expose Apple to new liability that it would otherwise not have faced: Claims about iOS versions older than iOS 13 may have been stale if filed in a new case but, under the relation back doctrine, could potentially survive a statute-of-limitations argument if brought via amendment in the current case.

Case No.: 5:20-cv-07495-EJD
ORDER RE AMENDMENT, DISCOVERY STAY & CASE SCHEDULE
9