1

2

3

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ALASDAIR TURNER, | Case No. 5:20-cv-07495-EJD |
| Plaintiff, | |
| v. | **ORDER DENYING CLASS CERTIFICATION; DENYING AS MOOT MOTIONS TO EXCLUDE** |
| APPLE, INC., | |
| Defendant. | Re: ECF Nos. 146, 157, 205, 269 |

Plaintiff Alasdair Turner moves for class certification of his claims against Defendant

Apple, Inc. under Rules 23(b)(3) and (b)(2).  The Court **DENIES** class certification.

## I.    BACKGROUND

Apple designs, manufactures, and sells iPhones, all of which run on Apple's proprietary

iOS operating system.  Answer ¶ 20, ECF No. 60.  According to Turner, certain versions of iOS

13 contain code that consumes cellular data without permission.  Second Am. Compl. (SAC) ¶¶ 3–

4, 23–27, 54, ECF No. 54.  Specifically, iPhones contain settings that allow users to toggle the

usage of cellular data on or off for specific apps.  Travostino Tr. at 65:3–66:8, ECF No. 147-7.

But certain pieces of malfunctioning code[1] purportedly ignore those toggles.  Turner claims that,

even when data is toggled off for some apps, those pieces of code still consume data on behalf of

those apps.

---

[1] Apple objects that Turner's current theory of buggy code is not the same as the theory of harm
pled in his operative complaint—that the code was purposefully designed.  In determining whether
Turner's current theory is encompassed in the complaint, the Court must construe the complaint
liberally.  *S.F. Baykeeper v. City of Sunnyvale*, No. 5:20-cv-00824, 2025 WL 823266, at *3 (N.D.
Cal. Feb. 3, 2025).  So construed, the complaint simply refers to *some* code that consumes data
regardless of whether that code was purposefully designed.  Accordingly, the Court concludes that
the operative complaint fairly encompasses inadvertent bugs in the iOS 13 code.

United States District Court
Northern District of California

1    Based on these allegations, Turner raised claims for trespass to chattels, violations of the

2    California Computer Data Access and Fraud Act (CDAFA) (Cal. Penal Code §§ 502(c)(1), (3),

3    (8)), and the unlawful and unfair prongs of the Unfair Competition Law (UCL).  Turner now

4    moves to certify the following class covering each of those claims: "All purchasers, owners, users,

5    or lessees of any Apple iPhones in the United States who used a limited cellular data plan with

6    that iPhone while any version of iOS 13 was installed."  Mot. at i, ECF No. 147-3.  He moves to

7    certify this class both as a damages class under Rule 23(b)(3) and as an injunctive class under Rule

8    23(b)(2).

9    **II.    MOTION FOR CLASS CERTIFICATION**

10   Before certifying a class, the Court must conduct a "rigorous analysis" of each of Rule

11   23's criteria.  *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 664

12   (9th Cir. 2022) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982)).  This requires

13   the Court to consider the merits of Turner's claims, but only to the extent relevant to the Rule 23

14   criteria.  *DZ Rsrv. v. Meta Platforms, Inc.*, 96 F.4th 1223, 1232 (9th Cir. 2024) (citations omitted).

15   Turner bears the burden of proving that these criteria are satisfied by a preponderance of

16   the evidence.  *Olean*, 31 F.4th at 665.  First, Turner must prove that each of the criteria in Rule

17   23(a)—numerosity, commonality, typicality, and adequacy—are satisfied.  *Id.* at 663.  Then,

18   Turner must prove "that the class fits into one of three categories" in Rule 23(b).  *Id.*  Here, the

19   relevant categories are (b)(3) and (b)(2).  A (b)(3) class requires Turner to show superiority and

20   predominance.  Fed. R. Civ. P. 23(b)(3).  A (b)(2) class, which is limited to "injunctive relief or

21   corresponding declaratory relief," requires Turner to show that "the party opposing the class has

22   acted or refused to act on grounds that apply generally to the class."  Fed. R. Civ. P. 23(b)(2).

23   **A.    Class Definition**

24   At the outset, the Court observes that the class definition proposed in Turner's certification

25   motion does not match the definition proposed in the operative complaint.  The currently offered

26   definition covers *all* versions of iOS 13.  Mot. at i.  The operative complaint's definition is limited

27   to a *subset* of iOS 13 versions, namely iOS 13.0–13.5.  SAC ¶ 54.

28

United States District Court
Northern District of California

1    Generally, "[t]he Court is bound to class definitions provided in the complaint and, absent

2    an amended complaint, will not consider certification beyond it." *Costelo v. Chertoff*, 258 F.R.D.

3    600, 604–05 & n.6 (C.D. Cal. 2009) (collecting cases).  While there is some room for "minor"

4    modifications to and narrowing of the complaint's class definition, neither of those situations is at

5    hand here.  *Davis v. AT&T Corp.*, No. 15-cv-2342, 2017 WL 1155350, at *2 (S.D. Cal. Mar. 28,

6    2017) (collecting cases).  The class that Turner seeks to certify now is broader than the definition

7    in Turner's complaint because it includes versions of iOS 13 that were not challenged in the

8    complaint.  Such an expansion of potential liability and class membership is not minor.

9    Accordingly, the Court will adhere to the complaint's class definition and evaluate Turner's

10   motion with the proposed class limited to iOS 13.0–13.5.

11       **B.       Rule 23(a)**

12           **1.       Numerosity**

13    A class is sufficiently numerous if it contains forty or more members.  *Vizcarra v. Unilever*

14   *U.S., Inc.*, 339 F.R.D. 530, 543 (N.D. Cal. 2021).  To prove the putative class meets this threshold,

15   Turner points to his expert's estimate that, when filtering for users running iOS 13 on limited data

16   plans, there were approximately 26.6 million iPhone users on the Verizon and AT&T networks

17   from September 2019–2020.  Sanyal Decl. ¶ 28 & tbls.1–2, ECF No. 147-80.  Although this

18   estimate is not limited to class members because it includes all versions of iOS 13, "the Court may

19   consider reasonable inferences drawn from the facts before it."  *Grace v. Apple, Inc.*, 328 F.R.D.

20   320, 331–32 (N.D. Cal. 2018) (citation omitted).  And the Court can reasonably infer that at least

21   forty of those millions ran the versions of iOS at issue in this case.  Forty is a vanishingly small

22   fraction of 26.6 million—just 0.0015%.  That does not even take into account the fact that there

23   are likely numerous other iPhone users running iOS 13 on networks other than Verizon and

24   AT&T.  Given the vast number of iPhone users on limited data plans, it is reasonable to infer that

25   at least forty of those users ran iOS 13.0–13.5.  Numerosity is therefore satisfied.

26           **2.       Commonality**

27    To prove commonality, Turner need show only that there is a single common question of

28   law or fact.  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011).  A question is common if it

United States District Court
Northern District of California

is "capable of classwide resolution" by way of a "common answer[]." *Id.* at 350.  There are common factual questions in this case related to Apple's knowledge of and response to the pieces of malfunctioning code that allegedly consumed data without permission.  This is sufficient to satisfy the low bar for commonality.

### 3.    Typicality

A class representative is typical if, when compared to absent class members, she suffers "the same or similar injury . . . based on conduct which is not unique to the [representative]." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (citation omitted). The representative's claims only need to be "reasonably coextensive with those of absent class members."  *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1116 (9th Cir. 2017) (citation omitted). Unless there is a danger that the representative will be "preoccupied with defenses unique" to her, that representative is typical.  *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (citation omitted).

Apple asserts that Turner will be preoccupied with questions about whether his iPhone's data usage was contrary to his settings—that is, whether data was toggled on or off for particular apps.  However, this is an issue that every class member will have to deal with.  While questions about data usage settings certainly pose predominance issues, *see infra* Section II.C.2, they do not create typicality concerns because they are not unique to Turner.  As such, Turner is typical.

### 4.    Adequacy

Adequacy is satisfied if (1) the representative and her counsel do not have a conflict of interest with the rest of the class and (2) will vigorously prosecute the action on behalf of the class. *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003).  Under this standard, lack of familiarity with the case can be disqualifying, but "the threshold of knowledge required to qualify a class representative is low; a party must be familiar with the basic elements of her claim and will be deemed inadequate only if she is startlingly unfamiliar with the case."  *In re Twitter Inc. Sec. Litig.*, 326 F.R.D. 619, 628 (N.D. Cal. 2018) (cleaned up).

Apple challenges Turner's familiarity with the case, but Turner has the basic understanding of the claims at issue needed to adequately represent the putative class.  At deposition, Turner

United States District Court
Northern District of California

1    explained that this case was about allegations Apple used his data without permission.  Turner

2    Dep. at 27:4–10, ECF No. 201-3.  That correctly captures the gravamen of the claims in this case.

3    Even if adequacy required Turner to possess more specific technical knowledge about his claims,

4    the reason he lacks that knowledge is largely a function of Attorneys' Eyes Only designations that

5    restrict the information available to him.  *Id.* at 111:10–21.  Thus, any lack of knowledge about

6    technical details does not reflect any supposed inadequacy but rather Apple's confidentiality

7    practices.

8        As there are no other concerns regarding Turner's ability to vigorously prosecute the

9    action, or any conflicts of interest, the Court finds Turner adequate.

10       **C.    Rule 23(b)(3)**

11          **1.    Superiority**

12       Before certifying a (b)(3) class, the Court must be assured "that a class action is superior to

13   other available methods for fairly and efficiently adjudicating the controversy.  Fed. R. Civ. P.

14   23(b)(3).  In "negative value suits" where "the cost of bringing suit outweighs the damages a

15   plaintiff could expect to recover . . . a class action is the *only* realistic possibility for redress."

16   *Hamilton v. Wal-Mart Stores, Inc.*, 39 F.4th 575, 588 n.6 (9th Cir. 2022) (emphasis).  Turner says

17   that this case is such a negative value suit, and Apple does not contest that assertion.  So, the Court

18   finds that a class action is superior because it is the only practical way class members can redress

19   their claimed injuries.

20          **2.    Predominance**

21       For predominance to be satisfied, "the common, aggregation-enabling, issues in the case

22   [must be] more prevalent or important than the non-common, aggregation-defeating, individual

23   issues." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (citation omitted).  On this

24   point, Apple makes several arguments, but most boil down to this:  Turner's claims succeed only

25   when iPhones consume user data without permission, but both permission and consumption are

26   intractably individual questions.  The Court agrees.

27       To begin, lack of permission is a necessary element for most of Turner's claims.  Trespass

28   to chattels requires lack of consent or authorization. *Berry v. Frazier*, 90 Cal. App. 5th 1258, 1272

Case No.: 5:20-cv-07495-EJD

ORDER DEN. CLASS CERTIFICATION        5

1    (2023); *Margolis v. Apple Inc.*, 743 F. Supp. 3d 1124, 1135 (N.D. Cal. 2024). Turner's CDAFA

2    claims under subsections (c)(1) and (c)(3) require proof that Apple acted "without permission."

3    Cal. Pen. Code §§ 502(c)(1), (3). And the CDAFA claim under subsection (c)(8) requires proof of

4    a "computer contaminant," Cal. Pen. Code § 502(c)(8), which in turn requires Turner to show that

5    Apple introduced code into iOS 13 that acts "without . . . permission of the owner." Cal. Pen.

6    Code § 502(b)(12). As for Turner's claim under the UCL's unlawful prong, that claim borrows

7    from other laws. *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1168 (9th Cir. 2012). Since

8    Turner seeks to borrow from the CDAFA, his claim under the unlawful prong also requires him to

9    prove lack of permission. *See* Mot. at 18.

10    More broadly, permission is the touchstone of Turner's theory of injury for Article III

11    purposes. *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180

12    (2000) (Article III standing requires injury in fact). Plainly, an iPhone user suffers no injury when

13    her iPhone uses cellular data in ways that she has permitted.

14    So, whether to prove liability or injury, Turner must be able to show that absent class

15    members did not grant permission for their iPhones to use their cellular data. The way a user

16    grants or denies permission to use cellular data is through settings that allow her to toggle cellular

17    data on or off for specific apps. Travostino Tr. at 65:3–66:8. But proving a lack of permission is

18    not as simple as pulling up each class member's settings. Turner's claims cover only certain

19    versions of iOS 13, and they cover activity far in the past. Whatever cellular data settings a user

20    had chosen when she was running a relevant version of iOS 13 several years ago have likely

21    changed by now. And there is no evidence that Apple systematically recorded users' cellular data

22    settings so that Turner can refer to Apple databases to fill in that gap. The only way to determine

23    a user's settings is to ask her. That is an unavoidably individual task—one that may border on

24    impossible when taking into account the passage of time and fading memories.

25    But there is more. Even if Turner could efficiently identify absent class members' cellular

26    data settings at times when they used iOS 13, he would still need to determine if iOS 13 used

27    cellular data in violation of those settings. The reason that iOS 13 sometimes used data despite

28    user-imposed restrictions is due to bugs in certain pieces of iOS 13's code; there was no single

United States District Court
Northern District of California

piece of code that caused this problem.  Mot. at 1; Miller Decl. ¶¶ 6, 8–9, ECF No. 154-5.  This means that, for each app for which cellular data was turned off, Turner would need to carefully examine the iOS 13 code that interacts with the app in order to determine if the code contains a bug causing inadvertent cellular data usage.  Such an app-by-app analysis is not the kind of common undertaking suitable for class certification.

Finally, assuming that Turner could overcome both of these hurdles, he would still need to provide a damages model before the Court can certify a (b)(3) class.  *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013).  While Turner need not execute his damages model at this stage, he must prove that his proposed model "will be able to reliably calculate damages."  *Lytle v. Nutramax Lab'ys, Inc.*, 114 F.4th 1011, 1024 (9th Cir. 2024).  Turner has proposed such a damages model, but he explains that he cannot yet execute the model because he lacks key data from an internal Apple dashboard.  Mot. at 21.  The Court has since denied Turner's request to access that data in discovery.  ECF No. 324.  Thus it is clear that Turner will not be able to calculate damages with his proposed model.[2]

For his part, Turner does not contest the conclusion that issues of permission raise individualized problems.  Hr'g Tr. at 6:5–21, ECF No. 332.  Instead, he argues permission and the toggling of data are beside the point.  According to Turner, his theory of injury is as follows:  The malfunctioning code at issue here also misclassifies that data usage to a category called System Services.  Miller Dep. at 185:8–14, ECF No. 147-6.  Because the code misclassifies data usage, users could not make informed decisions about controlling their data usage.  Reply at 2–3, ECF No. 200-3.  Turner does not explain where his chain of reasoning goes from there.  Ostensibly, Turner believes that a user's inability to make informed decisions is a harm itself, or such inability might lead to some other downstream harm.  Perhaps that could form the basis of a valid theory of injury.  But as the Court discussed above, lack of permission is a required *element* of all claims

---

[2] Turner also seeks nominal and punitive damages for which he does not need an economic model. The Court does not separately address those forms of damages since the permission-related issues discussed above prevent the Court from certifying any (b)(3) class regardless of the theory of damages.

United States District Court
Northern District of California

1    except the UCL unfairness claim.  Turner cannot ignore the elements of his claims that require

2    permission by advancing a theory of injury that does not.

3        In any case, Turner cannot proceed on this theory because he did not plead it in the

4    operative complaint.  *Brown v. Am. Airlines, Inc.*, 285 F.R.D. 546, 560 (C.D. Cal. 2011); *see also*

5    *Alvarez v. Off. Depot, Inc.*, No. 17-cv-7220, 2019 WL 2710750, at *5 (C.D. Cal. June 27, 2019)

6    (collecting cases).  Turner pushes back by pointing to language from an earlier order on a motion

7    to dismiss describing his theory as one based on "misclassifying how iOS 13 consumed data."

8    MTD Order at 3, ECF No. 53.  However, the MTD Order was describing Turner's *first* amended

9    complaint (ECF No. 30), not the currently operative *second* amended complaint.  The Court

10   dismissed Turner's fraud and misrepresentation claims from his first amended complaint.[3]  MTD

11   Order at 8–10.  And although the Court granted leave to amend, Turner did not re-plead any fraud

12   claims when he filed his second amended complaint.  *See* SAC.

13       For these reasons, the Court finds that predominance has not been satisfied.

14   **D.    Rule 23(b)(2)**

15       Turner cannot certify an injunctive (b)(2) class because he, as the proposed class

16   representative, lacks Article III standing to seek injunctive relief.  *Jeffrey Katz Chiropratic, Inc. v.*

17   *Diamond Respiratory Care, Inc.*, 340 F.R.D. 383, 387–88 (N.D. Cal. 2021) (citing *Hodgers-*

18   *Durgin v. de la Vina*, 199 F.3d 1037, 1044–45 (9th Cir. 1999)).  For one, the Court has already

19   held at the pleading stage that Turner "lacks standing to pursue an injunction" and denied leave to

20   amend to cure the standing defect.  MTD Order at 8.[4]  That aside, it is also clear that Turner lacks

21   standing to pursue injunctive relief on the current facts.  Standing to seek an injunction requires "a

22   showing of a significant likelihood of future injury."  *Mont. Shooting Sports Ass'n v. Holder*, 727

23   F.3d 975, 980 (9th Cir. 2013).  Turner no longer uses any version of iOS at issue in this case (iOS

24

25   [3] Turner's misclassification theory is essentially a misrepresentation theory, whether he means to
     argue that Apple misrepresented the extent of users' abilities to control their data usage or that the

26   alleged misclassification of data usage is itself a misrepresentation.

27   [4] While the Court specifically referred to Turner's Consumers Legal Remedies Act claim when
     dismissing without leave to amend, context from the MTD Order makes clear that the Court was

28   dismissing injunctive relief from the case.

United States District Court
Northern District of California

1   13.0–13.5), and no versions of iOS 13 are available anymore.  ECF No. 154-11; ECF No. 155-3 at

2   ¶ 24.  As such, there is no chance the challenged conduct in this case—iOS 13's use of limited

3   cellular data—will harm Turner in the future, and any injunction directing Apple to fix the bugs in

4   its iOS 13 code would have no impact on Turner.  Therefore, (b)(2) certification is not appropriate.

5   **III.    MOTIONS TO EXCLUDE EXPERT TESTIMONY**

6          Separately, both parties move to exclude expert testimony under *Daubert*.  Apple moves to

7   exclude the opinions of Dr. Paroma Sanyal estimating the value of cellular data and the average

8   amount of data usage.  ECF No. 157.  Turner moves to exclude the testimony of Dr. Jeffrey Prince

9   that veer beyond his economic expertise into the field of software engineering.  ECF No. 205.  The

10  Court **DENIES** both motions as **MOOT**.  None of the testimony that either party sought to

11  exclude bears on the Court's reasoning for denying class certification.  Since courts should

12  consider *Daubert* issues "only to the extent" necessary to decide class certification, it is prudent

13  for the Court to avoid opining unnecessarily on *Daubert* now.  *Lytle*, 114 F.4th at 1031 (quoting

14  *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013)).

15  **IV.    CONCLUSION**

16         The Court **DENIES** the motion for class certification and **DENIES AS MOOT** the

17  pending motions to exclude expert testimony.  The Court also **DENIES AS MOOT** Apple's

18  motion for leave to file a sur-reply (ECF No. 269).

19         Turner asks for another chance to attempt class certification.  But the issues preventing

20  class certification—the individual character of permission and Turner's lack of standing to seek

21  injunctive relief—are fundamental and uncurable.  The Court will not entertain any future class

22  certification motions.  The parties shall meet and confer and present the Court with a proposed

23  schedule for resolving the remaining individual claims in this action within **twenty-one (21) days**

24  of this Order.

25         **IT IS SO ORDERED.**

26  Dated:  July 16, 2025

27

28  _____
    EDWARD J. DAVILA
    United States District Judge

United States District Court
Northern District of California